UNITED STATES of America, Plaintiff,

v.

Manuel Antonio NORIEGA,
Defendant–Appellee,

Cable News Network, Inc., and Turner Broadcasting System, Inc., Appellants.

In re CABLE NEWS NETWORK, INC.
and Turner Broadcasting System,
Inc., Petitioners.

Nos. 90–5927, 90–5932.

United States Court of Appeals,
Eleventh Circuit.

Nov. 10, 1990.

---

Frank Rubino, Coconut Grove, Fla., Jon May, Miami, Fla., for defendant-appellee.

Before JOHNSON, HATCHETT and BIRCH, Circuit Judges.

PER CURIAM:

This matter is before us on the "emergency motion" of appellants Cable News Network, Inc. and Turner Broadcasting System, Inc. (collectively "CNN") to vacate three orders issued by the United States District Court for the Southern District of Florida (the "District Court"). This case presents a difficult question regarding the District Court's responsibility to balance the Sixth Amendment right to a fair trial of the defendant, General Manuel Antonio Noriega ("Noriega"), with CNN's First Amendment right to be free from prior restraints against the broadcasting of newsworthy information.

## I. BACKGROUND

General Noriega is presently incarcerated at the Metropolitan Correctional Center ("MCC") in Dade County, Florida. CNN wishes to broadcast recordings of telephone conversations between Noriega and his defense counsel, which were allegedly taped by the government while Noriega was in prison and obtained by CNN from an undisclosed source. Case No. 90–5926 is CNN's appeal of an oral order that prohibits it from broadcasting certain tape recordings in its possession until 6:00 p.m. on November 8, 1990. Case No. 90–5927 is CNN's appeal from two written orders of the District Court.[1] Subsequent to the filing of the above-described motions by CNN, it filed an additional petition, denom-

Stuart F. Pierson, Daniel M. Waggoner, Davis, Wright, Tremaine, Washington, D.C., Steven W. Korn, TBS, Atlanta, Ga., Terry Bienstock, Frates, Bienstock & Sheehe, Miami, Fla., for appellants.

1. The first written order, dated November 8, 1990, continued the temporary restraint ("TRO") in the oral order until CNN produced the tape recordings in its possession so the District Court could review the contents of those recordings to reach a decision on the merits. The second written order, dated November 9, 1990, clarified the first written order and specified that the restraint would remain in effect for up to ten days, or until such lesser time as the District Court needed to decide the issue on the merits after review of the tape recordings.

inated "Appellants' Petition for a Writ of Mandamus or Prohibition," in which CNN seeks an order from this Court "directing the District Court below to refrain from hearing a Motion for Contempt filed by Manuel Antonio Noriega" and seeking disqualification of District Court Judge William Hoeveler pursuant to 28 U.S.C. § 455 (No. 90–5932).

 At the outset, we note that this Court lacks jurisdiction to hear Case No. 90–5926 because the appeal is from an oral order that has not been entered on the docket of the District Court. *See* Fed.R. App.P. 4(a). Accordingly, that appeal did not divest the District Court of jurisdiction to enter the two written orders that are the subject of Case No. 90–5927. Noriega originally petitioned the District Court for injunctive relief, and CNN has framed its appeal as an "Emergency Motion To Vacate An Unconstitutional Prior Restraint," but the case is not appealable in its present posture.[2] In any event, CNN's motion is more properly viewed as a petition for a writ of mandamus against the District Court to correct an abuse of discretion.[3] *See Goldblum v. National Broadcasting Corp.*, 584 F.2d 904, 906 n. 2 (9th Cir.1978); *see also In re: Capital Cities/ABC, Inc.*, 918 F.2d 140 (11th Cir.1990). Accordingly,

with respect to Case No. 90–5927, we will treat CNN's motion as a petition for mandamus relief.

In his "Memorandum Of Law In Support Of Motion For Injunctive Relief" ("Noriega's Motion"), Noriega sought to prevent CNN from broadcasting the recorded conversations between Noriega and his attorneys. He did *not* seek to enjoin CNN from reporting on the government's taping of the conversations, and argued that "an order directing CNN not to broadcast the tapes is sufficiently narrow [to] protect the interests of the press as well as the defendant."[4] Noriega's Motion at 6. Although the restraint imposed by the District Court could arguably be read to embrace the CNN news report about the recordings as well as the recordings themselves, this order will only address the subject matter of Noriega's Motion, the recorded conversations between Noriega and his defense team.[5]

The District Court in entering the TRO, in an effort to maintain the status quo pending a determination on the merits, commented:

> ... Assuming, however, that there are at least some circumstances in which the First Amendment prohibits the prior restraint of even privileged attorney-client

**2.** *McDougald v. Jenson,* 786 F.2d 1465, 1472 (11th Cir.) ("It is well settled in this circuit that a TRO is not ordinarily appealable."), cert. denied, 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986). *See Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 426 (5th Cir. Unit A Aug.1981).

**3.** The Supreme Court has stated that "the writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 289, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988). Even if exceptional circumstances exist to justify mandamus relief, however, the party seeking mandamus bears the burden of demonstrating a "clear and indisputable" right to issuance of the writ. *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953).

**4.** This court has reviewed the videotape of the proposed news story (which was broadcast once on November 7, 1990 prior to entry of the TRO) and notes, as represented in CNN's brief, that "[t]he aural content of the tape [of attorney-client communications] is not audible in the

telecast." We also observe that Noriega's defense counsel, Mr. Frank A. Rubino ("Rubino") cooperated with CNN by reviewing an audio tape of a conversation purportedly between Noriega and Ms. Cristina Machin ("Machin") (Rubino's secretary and Spanish-language interpreter). Rubino verified the authenticity of the tape recording. A portion of the interview between a CNN reporter, Rubino and Machin in Rubino's office appears in the telecast. With respect to such conduct, we are mindful of the Supreme Court's admonition that "[c]ollaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures." *Sheppard v. Maxwell,* 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966) (cited with approval in *Nebraska Press Ass'n. v. Stuart,* 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1976)).

**5.** We have been advised that CNN, in disregard and defiance of the District Court's explicit restraining order, broadcast portions of some of the purported attorney-client communications.

communication, the Supreme Court's pronouncements on the doctrine of prior restraint suggest that a factual inquiry is required.... As was stated in the court's Order, the contents of the tape recordings were not before the court. Thus, the court was in effect being asked to make a factual determination without being allowed to review the facts. On this point, it is important to note that CNN is in possession of the tapes, and has resisted turning them over to the court for review. It seems fundamentally unfair to allow CNN to benefit from its refusal to disclose the contents of the tapes to the court—that is, to allow CNN to argue that no prior restraint should issue because no clear and immediate harm is apparent when the only reason that no clear and immediate harm yet appears is because CNN has so far prevented this court from reviewing the content of the tapes in its possession. In response to the portion of the court's Order requiring production of the tapes to this court for the Magistrate's review, CNN argues that the court should compel production of the tapes from the Government before looking to CNN.[1]

. . . .

The court herein wishes to emphasize that its Order was not a decision on the merits of the request for injunction, but rather a temporary restraint until such time as the Magistrate could review the tapes and permit this court to make a determination based on the merits.... But the unique nature of the problem facing this court, unlike other courts which have faced this issue, is that no such determination was nor is possible without knowing the precise contents of the speech sought to be restrained, here the privileged attorney-client communications in CNN's possession.

---

[1] The court notes that a review of the tapes in the Government's possession would not necessarily allow the court to determine whether or not disclosure of CNN's tapes would impair Noriega's right to a fair trial. It is entirely possible that CNN is in possession of communications between Noriega and his lawyers and staff which the Government did not record, since it appears that the Government did not tape all of Noriega's attorney-client conversations. The communications in CNN's possession might have been recorded from a location outside of the prison where Noriega is incarcerated.

## II. DISCUSSION

### A. The District Court's Obligation When Confronted With Allegations Of Prejudicial Publicity

"[F]ree speech and fair trials are two of the most cherished policies of our civilization, and it would be a trying task to choose between them." *Bridges v. California*, 314 U.S. 252, 260, 62 S.Ct. 190, 192, 86 L.Ed. 192 (1941). Within the context of pretrial and trial proceedings, a district court often is called upon to make this critical and difficult choice.[6] Balancing the First and Sixth Amendment concerns involved in a widely publicized, hence "sensational", criminal case, the former Fifth Circuit concluded that the trial court is accorded broad discretion to accomplish its primary responsibility of ensuring that the accused has a fair trial:

> The right of access to criminal proceedings becomes a highly controversial issue when First Amendment questions must be analyzed in conjunction with compet-

---

**6.** The Supreme Court has recognized a First Amendment right of access to criminal trials. *See Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion). Right of access to pretrial proceedings is determined on a case by case basis, focusing on the circumstances involved in the case under review. *See Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*); *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1978). As emphasized by the Court in *Press–Enterprise II*, consideration should be given as to whether the matter under scrutiny historically has been open to the press and the public, 478 U.S. at 8, 106 S.Ct. at 2740. As noted hereafter, the communications between a criminal defendant and his defense counsel historically have been private, even where such communications are not privileged.

ing Sixth Amendment considerations. "A heavy obligation rests on trial judges to effectuate the fair-trial guarantee of the Sixth Amendment." *United States v. Columbia Broadcasting System, Inc.,* 497 F.2d 102, 104 (5th Cir.1974). "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Sheppard v. Maxwell,* 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). In a widely publicized case, "the right of the accused to trial by an impartial jury can be seriously threatened by the conduct of the news media prior to and during trial." Report of the Committee on the Operation of the Jury System on the "Free Press–Fair Trial" Issue, 45 F.R.D. 391, 394 (1968).

*Thus, it is the trial judge's primary responsibility to govern judicial proceedings so as to ensure that the accused receives a fair, orderly trial comporting with fundamental due process.* The trial judge is therefore granted broad discretion in ordering the daily activities of his court. *Id.* at 401. "[A] trial judge should have the authority to adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity." *Columbia Broadcasting System, Inc. v. Young, supra,* 522 F.2d [234] at 241 [6th Cir.1975 (Per Curiam)]. See also, *United States v. Schiavo, supra,* 504 F.2d [1] at 6 [3d Cir.1974]; *United States v. Columbia Broadcasting System, Inc., supra,* 497 F.2d [102] at 106–07 [5th Cir.1974]. Within this discretion, therefore, the district judge can place restrictions on parties, jurors, lawyers, and others involved with the proceedings despite the fact that such restrictions might affect First Amendment considerations. *Sixth Amendment rights of the accused must be protected always. United States v. Columbia Broadcasting System, Inc., supra; United States v. Schiavo, supra.* United States v. Gurney, 558 F.2d 1202, 1209–10 (5th Cir.1977) (emphasis added), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978); *see Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 570, 96 S.Ct. 2791, 2808, 49 L.Ed.2d 683 (1976) ("This Court has frequently denied that First Amendment rights are absolute and has consistently rejected the proposition that a prior restraint can never be employed."); *Estes v. Texas,* 381 U.S. 532, 540, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965) (The right to a fair trial is so basic to our legal system that it has been called "the most fundamental of all freedoms."); *In re Application of Dow Jones & Co.,* 842 F.2d 603, 609 (2d Cir.), *cert. denied,* 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988) ("When the exercise of free press rights actually tramples upon Sixth Amendment rights, the former must nonetheless yield to the latter.").

Furthermore, the Supreme Court has held that "[t]he First Amendment generally grants the press no right to information about a trial superior to that of the general public." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 609, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978); *Gurney,* 558 F.2d at 1208. The general public has no right of access to private communications between a defendant and his counsel. The Fifth Circuit has upheld a district court's denial of broadcasting stations' separate requests to copy for public broadcast audiotaped discussions, which occurred in a "sting" operation, between Federal Bureau of Investigation agents and defendants. *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423 (5th Cir. Unit A Aug. 1981). The Fifth Circuit specifically was concerned with protecting the integrity of the pending criminal trial of one of the defendants, L.G. Moore,[7] and determined that the Constitu-

---

7. In pertinent part, the district court's opinion states:

Widespread publication of these tapes prior to trial will severely prejudice Mr. Moore's sixth amendment right to a fair trial, as well as potentially deny him rights guaranteed by the fourth and fifth amendments. Moreover, if the tapes are prematurely heard by the public, this court would be severely hampered in selecting a fair and impartial jury in the forthcoming trial.

*Belo Broadcasting Corp.,* 654 F.2d at 425.

tion did not accord the broadcasting stations the right to copy the tapes for public broadcast. *Id.* at 427. "It is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." *Id.* at 431.

 Notwithstanding the District Court's broad discretion to balance First Amendment interests with a criminal defendant's Sixth Amendment right to a fair trial, a conclusory representation that publicity might hamper a defendant's right to a fair trial is insufficient to overcome the protections of the First Amendment. *See Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 15, 106 S.Ct. 2735, 2744, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*) ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [the right to a fair trial]."); *United States v. Columbia Broadcasting Sys., Inc.,* 497 F.2d 102, 104 (5th Cir.1974) ("[B]efore a prior restraint may be imposed by a judge, even in the interest of assuring a fair trial, there must be 'an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil.'" (quoting *Craig v. Harney,* 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947))).

In the context of a trial court's decision to close a preliminary hearing to protect a defendant's right to a fair trial, the Supreme Court required specific factual findings that: 1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by the publicity; 2) there is a substantial probability that closure would prevent that prejudice; and 3) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. *Press–Enterprise II,* 478 U.S. at 14, 106 S.Ct. at 2743. The purpose of requiring specific findings is to demonstrate that " 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" 478 U.S. at 13–14, 106 S.Ct. at 2743 (quoting *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 510,

104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*)); *see Belo Broadcasting Corp.,* 654 F.2d at 430 ("[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."); *Columbia Broadcasting Sys.,* 497 F.2d at 106 (For "a danger [to be] sufficient to warrant a prior restraint, it is basic constitutional law that the limitation can be no broader than necessary to accomplish the desired goal."). In the context of a suppression hearing, the Supreme Court directed the trial court, considering closure because of privacy interests implicated in wiretapped conversations, to determine "whose privacy interests might be infringed, how they would be infringed, what portions of the tapes might infringe them, and what portion of the evidence consisted of the tapes." *Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984).

 The Supreme Court has recognized that prejudicial pretrial publicity can defeat a defendant's right to a fair trial by an impartial jury. *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *see Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."). The Court has placed an *affirmative duty* on trial courts to guard against prejudicial pretrial publicity:

> To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary.

*Gannett Co. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979) (citation omitted). Even if the attorney-client communications in this case were

determined *not* to be privileged, the District Court may decide that the disclosure of these communications would constitute an impediment to Noriega's fair trial.

Under Supreme Court and Eleventh Circuit precedent, the District Court's determination of privilege cannot be conclusory, but must be stated definitively and explicitly based on the particular facts and circumstances of this case. *See Gurney,* 558 F.2d at 1211 ("The district court's rulings denying press access implemented a legitimate governmental interest in securing for the accused the fair trial guaranteed them by the Sixth Amendment. The court's actions bore a reasonable relation to the achievement of that purpose."). We emphasize that the District Court must *delineate carefully* its reasons for proscribing the broadcast of the tapes in question, guided by the three considerations of *Press–Enterprise II.* Particular attention should be given to the Sixth Amendment concern for an impartial jury. *See Belo Broadcasting Corp.,* 654 F.2d 423.

The District Court must possess the subject tapes in order to make its *in camera* determination of whether the attorney-client communications are privileged or, while not privileged, are of such a nature that disclosure would impair Noriega's Sixth Amendment rights. We are troubled by CNN's refusal to obey the District Court's order to release the tapes in question to the court for review.[8]

With national and international significance and implications, Noriega's trial has received unprecedented media coverage. In light of this status, "[t]he Sixth Amendment's guarantee of an impartial jury ... is an obligation of the nation, not the accused. It is not his duty to provide an impartial jury." *Levine v. United States District Court,* 764 F.2d 590, 602 (9th Cir. 1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). In our nation, the courts are charged with safeguarding a defendant's right to a fair trial and with

cautiously balancing First Amendment and Sixth Amendment interests. "It is not asking too much to suggest that those who exercise First Amendment rights in newspapers or broadcasting enterprises direct some effort to protect the rights of an accused to a fair trial by unbiased jurors." *Nebraska Press Ass'n,* 427 U.S. at 560, 96 S.Ct. at 2803.

B. *The Existence Of The Attorney–Client Privilege As It Relates To The District Court's Review And Analysis Of Potential Harm To Noriega*

The purpose of the attorney-client privilege is to encourage open and complete communication between a client and his attorney by eliminating the possibility of subsequent compelled disclosure of their confidential communications. *United States v. Suarez,* 820 F.2d 1158, 1160 (11th Cir.), *cert. denied,* 484 U.S. 987, 108 S.Ct. 505, 98 L.Ed.2d 503 (1987). In order to invoke this privilege, the claimant must establish the following:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978) (quoting *In re Grand Jury Proceedings,* 517 F.2d 666, 670 (5th Cir.1975)).

**8.** In *United States v. Columbia Broadcasting Sys., Inc.,* 497 F.2d 107, 109 (5th Cir.1974), the former Fifth Circuit found that the district court held Columbia Broadcasting System, Inc. (CBS) in criminal contempt for telecasting sketches of scenes from a publicized criminal trial in defiance of the court's order, but remanded the case for trial of the contempt action before another judge instead of the trial judge who ordered CBS not to televise the sketches.

 The attorney-client privilege is not absolute. Because it "serves to obscure the truth, . . . it should be construed as narrowly as is consistent with its purpose." *Suarez*, 820 F.2d at 1160. Thus, this court has developed a two-part analysis to determine when the attorney-client privilege protects a communication between an attorney and his client from government intrusion.[9] A communication between an attorney and his client will be protected if it is: "(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential." *United States v. Bell*, 776 F.2d 965, 971 (11th Cir.1985) (emphasis in original), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986) (quoting *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir. Unit B 1981)).

 In applying the law surrounding the attorney-client privilege to the facts of this case we will first assume, for the purpose of discussion, that Noriega did sign a valid release evidencing his understanding that *all* of his telephone conversations, including those with members of his defense team, would be recorded.[10] Under such circumstances, it is conceivable that the District Court could find that Noriega's attorney-client privilege would not prohibit the government's recording of Noriega's telephone conversations with his defense attorneys because he had no reasonable expectation of privacy. However, this is a matter to be addressed by the District Court. If Noriega did intend his conversations with his defense attorneys to be confidential, after signing a release, the District Court would be required to ascertain whether this expectation was reasonable.

 It is a "bedrock principle that the attorney-client privilege is the client's and his alone. If the client wishes to waive it, the attorney may not assert it, either for the client's or his own benefit." *United States v. Juarez*, 573 F.2d 267, 276 (5th Cir.), *cert. denied*, 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978). Thus, it is also conceivable that the District Court, after examining the telephone usage release signed by Noriega, may determine that Noriega did waive his attorney-client privilege as to the recorded conversations. If this is the case, the privilege may not be assertable. Again, this is a matter for determination by the District Court.

The determination of whether the telephonic communications between Noriega and his defense counsel are privileged, while not necessarily dispositive of whether such communications should be publicly broadcast, would be relevant to the District Court's assessment of potential harm to Noriega's right to a fair trial.

## III. CONCLUSION

It is manifest that the District Court has been presented a delicate, difficult and important task requiring it to balance the press and public's First Amendment rights, the Sixth Amendment rights of the accused, and the public's expectation that the trial will be fair and held before an impartial jury. However, CNN has shackled the District Court by refusing that court's reasonable request to review the audio tapes it has in its possession and which CNN desires to broadcast. While appealing to our nation's judicial system for relief, CNN is at the same time defiant of that system's reasonable directions.

---

**9.** Because "a communication between an attorney and his client that is protected by the common law attorney-client privilege is also protected from government intrusion by the sixth amendment," *United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir.), *cert. denied*, 464 U.S. 914, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983), this discussion of attorney-client privilege encompasses the Sixth Amendment right to effective assistance of counsel.

**10.** It is not unusual or unreasonable to condition the use of telephones by penal inmates on monitoring of the telephone calls by the authorities charged with maintaining the security of the penal facility. *See, e.g., Feeley v. Sampson*, 570 F.2d 364, 373–374 (1st Cir.1978) (suggesting that striking an appropriate balance between the interests of prison authorities and prisoners could be achieved by conditioning prisoners' access to telephones on their recognition that prison guards have authority to monitor telephone conversations). Moreover, possession of such communications by one element of the government does not necessarily implicate another element.

■ The foregoing analysis compels the conclusion that the First Amendment interests of the press and the public will be best served by *immediate production* of the tapes held by CNN so that the District Court can conduct the difficult balancing of constitutional rights required under these circumstances, an obligation which the District Court is required to discharge. After review of such tapes, it is entirely conceivable that the District Court may determine that the disclosure of only *portions* of such tapes would threaten the Sixth Amendment rights of Noriega. Under such circumstances the accused's Sixth Amendment right to a fair trial is properly balanced against the First Amendment rights of the press and public. At this juncture, however, we are required to speculate as a result of CNN's refusal to produce the tape recordings.

■ No litigant should continue to violate a district court's order and attempt to have that district court's order reviewed at the same time.

Accordingly, for the reasons stated above, we DENY the initial petition for mandamus relief, CNN's request for entry of a stay of the District Court's TRO and its request for oral argument (Case No. 90–5927) and DENY CNN's subsequent petition (Case No. 90–5932).