**UNITED STATES of America,
Plaintiff,**

v.

**Gerardo HERNANDEZ,
et al., Defendants.**

**No. 98–0721–CR.**

United States District Court,
S.D. Florida.

Dec. 18, 2000.

See also, 106 F.Supp.2d 1317.

Caroline Heck Miller, AUSA and David Buckner, AUSA, United States Attorney's Office, Miami, FL, John S. Kasternakes, AUSA, United States Attorney's Office, West Palm Beach, FL, for the Government.

Paul A. McKenna, Miami, FL, for Defendant Gerardo Hernandez.

Joaquin Mendez, Federal Public Defender's Office, Miami, FL, for Defendant John Doe No. 3.

William M. Norris, Coconut Grove, FL, for Defendant John Doe No. 2.

Philip Horowitz, Miami, FL, for Defendant Rene Gonzalez.

Jack Blumenfeld, Coral Gables, FL, for Defendant Antonio Guerrero.

Susan Aprill, Holland & Knight, Miami, FL, for Intervenor, Knight Ridder, Inc.

Karen Williams Kammer, Mitrani, Rynor, Adamsky, Macaulay & Zorrilla, Miami, FL, for Intervenor, NBC Subsidiary (WTVJ–TV), LP ("NBC").

### ORDER GRANTING EMERGENCY MOTIONS TO INTERVENE FOR ACCESS TO COURT RECORDS AND GRANTING PRESS AND NEWS MEDIA ACCESS TO EXHIBITS RECEIVED INTO EVIDENCE

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Emergency Motion to Intervene for Access to Court Records, filed December 12, 2000 by Intervenor Knight Ridder, Inc., and the Emergency Motion to Intervene for Access to Judicial Records, filed December 13, 2000 by Intervenor NBC Subsidiary (WTVJ–TV), LP ("NBC"). The Government responded on December 13, 2000 and stated that it has no objection to the Motions. Defendants Ruben Campa and Gerardo Hernandez filed Responses in Opposition to the Motions on December 14, 2000. The Court heard oral argument at a hearing on that same date. Having reviewed the Motions, the Responses, and the record, the Court finds as follows.

### I. Introduction

Neither the Government nor Defendants object to Intervenors' standing to request the relief sought within their Motions. Accordingly, the Court finds that Intervenors have standing "to seek access in suits to

which [they are] not a party." *Newman v. Graddick,* 696 F.2d 796, 800 (11th Cir. 1983) (citations omitted).

Intervenors, representing members of the press and news media, seek access to "any material that is either prepared by the Court, relied on by the Court, used by the Court, whether or not it's filed in the Court file, admitted into evidence or shown to the jury," all of which Intervenors consider "judicial record." (Tr. Hr'g of 12/14/00 at 16.) Among the items sought are documents, photographs, and at least "3,000 pages of transcripts that have been prepared by the Government or acting for the Government in connection with computer disks that were seized from various persons, homes or other places of business and that they have been put into some sort of binders and multiple copies have been made." (*Id.* at 11.) Intervenors argue that they have a common law right to access such evidence, and that the Court may not limit that right in the absence of a compelling interest.

Asserting their Sixth Amendment right to a fair trial, however, Defendants Campa and Hernandez object to any access other than that available during a public trial or, in the alternative, urge the Court to provide the press and news media with access only to evidence, which counsel has published to the jury. Defendants contend that the dissemination of evidence, admitted into the record prior to its publication to the jury, "will likely generate a new wave of prejudicial publicity against the defendants, and create a climate of public hostility that will undermine the defendants' right to a fair trial." (Def. Campa's Resp. at 2.) According to Defendants, belying this concern is the admission and re-

porting by the press and news media of the evidence in the Government's case-in-chief, prior to the presentation, if any, of Defendants' evidence. Lastly, Defendants argue that due to the Court's Order That All Parties and Counsel Shall Abide by Local Rule 77.2 of October 2, 1998 counsel is unable to balance the view of the evidence from the press, which Defendants project will be, and has been, "unfairly one-sided." (*Id.* at 3.)

## II. Analysis

### A. Press and News Media Have Right to Access Evidence Admitted into Trial Record

Whenever examining the public's right to access public trials, the Eleventh Circuit has "found that 'the starting point in such a discussion is the proposition that, absent some exceptional circumstances, trials are public proceedings.' " *Brown v. Advantage Engineering, Inc.,* 960 F.2d 1013, 1015 (11th Cir.1992) (quoting *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1569 (11th Cir.1985)). Access to a criminal trial is unequivocally the public and the press's First Amendment right. *United States v. Hastings,* 695 F.2d 1278, 1280 (11th Cir.1983) (citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 2618–19, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 579–80, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality)).[1] As the Eleventh Circuit has opined, "open proceedings may be imperative if the public is to learn about the crucial legal issues that help shape modern society. Informed public opinion is critical to effective self-governance." *Newman,* 696 F.2d at 801

---

1. Defendant Hernandez cites *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 379–80, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), for the proposition that the public and press do not possess a right to attend a criminal trial. The Court, however, finds the Supreme Court plurality's decision of *Richmond Newspapers, Inc.,* 448 U.S. at 579–80, 100 S.Ct. 2814, holding that the public and press do share a right to attend a criminal trial, overrules *De-*

*Pasquale,* 443 U.S. at 379–80, 99 S.Ct. 2898. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (reaffirming public and press's right to attend criminal trials); *Wilson,* 759 F.2d at 1569 (finding *Richmond Newspapers, Inc.* "held that implicit in the First Amendment is the constitutional right to attend criminal trials").

(citing *Grosjean v. American Press Co.*, 297 U.S. 233, 250, 56 S.Ct. 444, 80 L.Ed. 660 (1936)).

■ This First Amendment right, however, is a "right to attend" trial, *Hastings*, 695 F.2d at 1280, rather than a license allowing cameras or tape-recorders into the courthouse, *id.*,[2] or "physical access to courtroom exhibits introduced into evidence at a criminal trial." *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 426–27 (5th Cir.1981)[3] (holding that press has no right of physical access to audiotapes which recorded conversations between defendants and FBI agents and which were introduced into evidence at trial where transcripts were provided and other defendants were pending trial).

■ Even though "the press and public have a First Amendment right of access to criminal trials, ..., the right of access to judicial records is not of constitutional dimension but rather derives from common law." *United States v. Noriega*, 752 F.Supp. 1037, 1040 (S.D.Fla.1990) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 608–10, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). The Eleventh Circuit presumes a "common law right to inspect and copy judicial records," *United States v. Rosenthal*, 763 F.2d 1291, 1292–93 (11th Cir.1985) (finding, where audiotapes from Title III wiretap were played in open court and admitted into evidence, no legitimate reason existed to bar press's access to tapes) (citing *Warner Communications, Inc.*, 435 U.S. at 597, 98 S.Ct. 1306), while noting that this right "to inspect and copy records is not absolute." *Newman*, 696 F.2d at 803 (citing *Warner Communications*, 435 U.S. at 598, 98 S.Ct. 1306). Courts have also protected the press's right to examine exhibits admitted into evidence at trial. *See United States v. Posner*, 594 F.Supp. 930, 935 (S.D.Fla. 1984) (allowing press access to entirety of defendant's tax returns, though only portions of them were "offered into evidence").[4]

■ As this Court has explained, "in contrast to the compelling justification required for closure of criminal trials, ..., the trial court has broad latitude where only the common-law right of access to court records is implicated." *Noriega*, 752 F.Supp. at 1040 (citation omitted). Courts may impose reasonable time, place, and

---

**2.** The Federal Rules of Criminal Procedure as well as the Local Rules proscribe the use of cameras and other recording devices in the courthouse. See, for example, Federal Rule of Criminal Procedure 53, which provides, "The taking of photographs in the court room during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the court room shall not be permitted by the court," and Southern District of Florida Local Rule 77.1, which provides in pertinent part,

> Other than required by authorized personnel in the discharge of official duties, all forms of equipment or means of photographing, tape-recording, broadcasting or televising within the environs of any place of holding court in the District, including courtrooms, chambers, adjacent rooms, hallways, doorways, stairways, elevators or offices of supporting personnel, whether the Court is in session or at recess, is prohibited.

**3.** The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on Sep-

tember 30, 1981. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**4.** Relying on *Newman*, 696 F.2d at 801, Intervenors argue that the press has a right to access items used or relied upon by the Court before trial. In *Newman*, Alabama prison inmates filed a motion for a court order directing the release of prisoners, as prison overcrowding worsened. *Id.* at 798–99. As the *Newman* court explained, "In response to the prisoners' motion, the district court ordered the Department of Corrections to submit periodic lists of 250 prisoners 'least deserving of further incarceration.'" *Id.* at 799. The *Newman* court found that the press had a right to access these lists, even in the pretrial phase of the case, because these prisoner lists "were decisional as to which prisoners were to be released." *Id.* at 801. *Newman* is thus distinguishable from the case *sub judice*, as the Court finds no exhibits, either admitted or sought to be admitted into the record, were "decisional" prior to trial.

manner restrictions on the press's right to access judicial records. *Belo Broadcasting*, 654 F.2d at 428 ("Just as a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic, ... so may a trial judge in the interest of the fair administration of justice, impose reasonable limitations on access to a trial.") (quoting *Richmond Newspapers, Inc.*, 448 U.S. at 581 n. 18, 100 S.Ct. 2814 (plurality) (citation omitted)). Courts need not "measure requests for access to evidence only against the 'most compelling circumstances,'" *Belo Broadcasting*, 654 F.2d at 434, as the press's access "may interfere with the administration of justice and hence may have to be curtailed." *Newman*, 696 F.2d at 803 (citing *Belo Broadcasting Corp.*, 654 F.2d at 423 (finding broadcasting of tapes would prejudice "yet-to-be-tried" co-defendant, while noting "several circumstances in which 'the common-law right of inspection has bowed before the power of the court to insure that its records' are not used as 'vehicle(s) for improper purposes'") (quoting *Warner Communications*, 435 U.S. at 602, 98 S.Ct. 1306)); *see also Rosenthal*, 763 F.2d at 1294 (reiterating that "district courts should look to whether the records are sought for such illegitimate purpose as to promote public scandal or gain unfair commercial advantage ... and whether the press has already been permitted substantial access to the contents of the records") (quotation marks omitted) (quoting *Newman*, 696 F.2d at 796 (citing *Warner Communications*, 435 U.S. at 598–603 & n. 11, 98 S.Ct. 1306)).

The trial court bears the primary responsibility of ensuring criminal defendants their Sixth Amendment right to a fair trial. This responsibility is at the root of the court's discretionary authority to impose reasonable restrictions on the press's access to the evidence. *Noriega*, 917 F.2d at 1547–48 ("The right of access to criminal proceedings becomes a highly controversial issue when First Amendment questions must be analyzed in conjunction with competing Sixth Amendment considerations.") (quoting *United States v. Gurney*, 558 F.2d 1202, 1209 (5th Cir.1977)). The Eleventh Circuit discussed the potential for harm to this right, which sensational media exposure can engender:

> "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). In a widely publicized case, "the right of the accused to trial by an impartial jury can be seriously threatened by the conduct of the news media prior to and during trial." Report of the Committee on the Operation of the Jury System on the "Free Press–Fair Trial" Issue, 45 F.R.D. 391, 394 (1968).

*Noriega*, 917 F.2d at 1548 (quoting *Gurney*, 558 F.2d at 1209–10). Acknowledging the trial court's broad discretion to strike the balance between protecting the defendant's Sixth Amendment rights and the press and public's First Amendment rights, the Eleventh Circuit court found,

> Within this discretion, therefore, the district court can place restrictions on parties, jurors, lawyers, and others involved with the proceedings despite the fact that such restriction might affect First Amendment consideration. Sixth Amendment rights of the accused must be protected always.

*Noriega*, 917 F.2d at 1548 (quoting *Gurney*, 558 F.2d at 1210) (citations omitted). It is well settled that evaluating these competing rights is "best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Belo Broadcasting Corp.*, 654 F.2d at 430 (internal quotation marks omitted) (quoting *Nixon v. Warner Communications*,

*Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)).

Although the "press cannot be denied access to any information already within the public domain," *Gurney,* 558 F.2d at 1208 (citing *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)), "[w]hen representatives of the communications media attend trials they have no greater rights than other members of the public." *Gurney,* 558 F.2d at 1208 (quoting *Estes v. Texas,* 381 U.S. 532, 584, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Warren, J., concurring)); *see also United States v. Noriega,* 917 F.2d 1543, 1548 (11th Cir.1990) (finding that "the First Amendment generally grants the press no right to information about a trial superior to that of the general public") (quoting *Warner Communications,* 435 U.S. at 609, 98 S.Ct. 1306). Building on the latter proposition, the Supreme Court in *Warner Communications, Inc.,* 435 U.S. at 589, 98 S.Ct. 1306, upheld the denial of Warner Communications' request to copy, broadcast, and sell the Watergate tapes admitted into evidence at trial and held,

> The First Amendment generally grants the press no right to information about a trial superior to that of the general public. "Once beyond the confines of the courthouse, a news-gathering agency may publicize, within wide limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public."

*Id.* at 609, 98 S.Ct. 1306 (quoting *Estes,* 381 U.S. at 589, 85 S.Ct. 1628 (Harlan, J., concurring)). The Supreme Court upheld the trial court's denial of the press's request to gain physical access to the tapes for the purpose of selling and rebroadcasting them to the public because "the press . . . was permitted to listen to tapes and report on what was heard. Reporters were also furnished transcripts of the tape, which they were free to comment upon and publish. The contents of the tapes were given wide publicity by all elements of the media." *Warner Communications, Inc.,* 435 U.S. at 609, 98 S.Ct. 1306. Likewise, the *Belo Broadcasting Corp.* court upheld the denial of the media's right to play tapes, admitted into evidence at trial, over the air waves largely because,

> as in *Warner Communications,* there were "no restrictions on press access to, or publication of any information in the public domain." . . . Members of the press were allowed to listen as the tapes were played in court; transcripts were prepared and distributed for their use; reporters and broadcasters were free to report this information as they wished.

*Belo Broadcasting,* 654 F.2d at 427 (quoting *Warner Communications,* 435 U.S. at 609, 98 S.Ct. 1306).

## B. Application of the Right

In the case *sub judice,* the Court finds that since the commencement of trial, the press and public have been permitted "substantial access" to the evidence published to the jury. *Rosenthal,* 763 F.2d at 1294. Counsel for the Government, when publishing documents or photographs in evidence to the jury, has displayed such evidence on an ELMO machine, which projects an image of the evidence on a monitor specifically placed in the public gallery for the public, news media and press to see. The Court nevertheless recognizes the press's common law right to access not merely the evidence published to the jury, but also all of the evidence admitted into the record, at trial. The press and news media shall therefore have access to all evidence admitted into the trial record.

On December 11, 2000, the Court admitted into evidence a 1,350–page, three-volume notebook of decrypted computerized data in Spanish. The Government has proffered that it plans to introduce the English translation of this data into evidence within the next few days of trial. Prior to its admission into the record, how-

ever, the Court precludes the press and news media from access to the English translation. Access will be allowed, if and when the translation is admitted into the record.[5]

The Court further finds that the press and news media's access to the evidence admitted into the record does not prejudice Defendants. Defendant Campa argues that

> unless defense counsel are allowed to talk to the press and respond publically to the evidence that is released to the public, the public's view of what the evidence at trial will show will be unfairly one-sided and likely to create a hostile, prejudicial environment detrimental to the defendants' right to a fair trial.

(Def.Campa's Resp. at 2–3.) Defendant Campa, however, cites no caselaw in support of this position; likewise, the Court finds no caselaw that has addressed this question. On October 2, 1998, the Court limited what counsel may communicate to the public about this case, pursuant to Southern District of Florida Local Rule 77.2. (Order That All Parties & Counsel Shall Abide by Local Rule 77.2 of 10/2/98 at 1–2.) Local Rule 77.2.A.4 provides,

> During the trial of any criminal matter, including the period of selection of the jury, no lawyer or law firm associated with the prosecution or defense shall give or authorize any extrajudicial statement or interview, relating to the trial or the parties or issues in the trial which a reasonable person would expect to be disseminated by means of public commu-

nication, except that the lawyer or law firm may quote from or refer without comment to public records of the Court in the case.

S.D. Fla. Local R. 77.2.A.4. The Court finds Defendants' foreshadowing of a "hostile, prejudicial environment" resulting from the media's access to the evidence too speculative, at this point, to justify either denial of press and news media's access to evidence admitted into the trial record, or vacation of the Court's October 2, 1998 Order. *See Noriega*, 917 F.2d at 1549 (finding "a conclusory representation that publicity might hamper a defendant's right to a fair trial is insufficient to overcome the protections of the First Amendment") (citations omitted).

 The Eleventh Circuit's well settled admonition to all "involved in the proceedings," however, bears repeating:

> In a widely publicized case, "the right of the accused to trial by an impartial jury can be seriously threatened by the conduct of the news media prior to and during trial." ... Thus, it is the trial judge's primary responsibility to govern judicial proceedings so as to ensure that the accused receives a fair, orderly trial comporting with fundamental due process. The trial judge is therefore granted broad discretion in ordering the daily activities of his court.... "[A] trial judge should have the authority to adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity." ... Within this discretion, therefore, the district

---

**5.** Intervenors seek access to these English translations prior to their admission into the record, based in part on their reliance on *Noriega*, 752 F.Supp. at 1040–44. The *Noriega* court, however, found that the press has a right of access to tapes, which the government's law enforcement agents recorded, and which the court had transcribed and translated into English, at the court's expense. *Id.* at 1041. As the government did not object to the release of these tapes to the press, the court found that the press's right to the tapes superseded CNN's purported proprietary interest in the tapes, which CNN had lawfully

obtained from the government. *Id.* The court also found that the transcripts of Noreiga's conversations, though not admitted into the trial record, "were relied on by this court in reaching its determination as to whether disclosure of their contents would impair Noriega's right to fair trial." *Id.* at 1042. This Court therefore distinguishes *Noriega*, 752 at 1037, because the Court has not examined, let alone relied on, the English translation of the data, which have likewise not yet been admitted into the record. Moreover, the Court has not played any role in the translation of this data.

judge can place restrictions on parties, jurors, lawyers, and others involved with the proceedings despite the fact that such restrictions might affect First Amendment considerations. Sixth Amendment rights of the accused must be protected always.

*Noriega*, 917 F.2d at 1548 (quoting *Gurney*, 558 F.2d at 1209–10) (citations omitted). "It is not asking too much to suggest that those who exercise First Amendment rights in newspapers or broadcasting enterprises direct some effort to protect the rights of an accused to a fair trial by unbiased jurors." *Noriega*, 917 F.2d at 1550 (quoting *Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 560, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)).

Accordingly, it is

**ORDERED AND ADJUDGED** that the Emergency Motion to Intervene for Access to Court Records, filed December 12, 2000 by Intervenor ·Knight Ridder, Inc., and the Emergency Motion to Intervene for Access to Judicial Records, filed December 13, 2000 by Intervenor NBC Subsidiary (WTVJ–TV), LP ("NBC"), are **GRANTED** as follows.

1. Beginning December 19, 2000, at the end of each trial day, the press and news media shall have access to all evidence admitted into the trial record on that day.[6]

2. The parties shall make the evidence available to the press and news media inside the United States Attorney's Press Room, located on the Second Floor of the James Lawrence King Building, from 3:00 p.m. to 5:00 p.m., after each day of trial.

3. The parties shall furnish one reproduction of any documentary evidence, that is any textual evidence printable on a 81/2″ by 11″ piece of paper, admitted into the trial record. Such copy shall be available for viewing and copying inside the press room. The Clerk of Court for the Southern District of Florida shall provide a copy machine and shall make copies for the press and news media as requested. Copies shall be made within a reasonable time. Any press or news media requesting copies shall reimburse the Clerk of Court, pursuant to the statutory rate. 28 U.S.C. § 1914(b), Judicial Conference Schedule of Additional Fees, District Court Miscellaneous Fee Schedule (4) (1997).

4. Inside the press room from 3:00 p.m. to 5:00 p.m., at the end of each day of trial, the parties shall also make available to the press and news media all non-documentary evidence for the limited purpose of viewing, photographing, and/or videotaping. The press and news media shall not touch or otherwise handle any of the non-documentary evidence, including photographs and charts.

5. All evidence, while inside the press room at the foregoing designated times, shall be under the custody and close watch of the Clerk of Court and the United States Marshal, who shall be responsible for the enforcement of this Order.

6. The press and news media shall not have physical access to any original pieces of evidence, as the risk of damaging or altering the current state of such evidence jeopardizes Defendants' Sixth Amendment rights to a fair trial.

7. All parties, Intervenors, the Clerk of Court and U.S. Marshal shall make reasonable accommodations consistent with this Order.

---

**6.** As the instant Motions were filed after the trial began, and as Intervenors seek access to all admitted trial exhibits, the first day of access requires that Intervenors be able to view all the exhibits from the past five days of testimony. Though the Government estimated at oral argument that it had introduced between eighty to 100 exhibits, the Court counts approximately 511 exhibits as of the close of trial on December 14, 2000.