USCA1 Opinion

 

 August 24, 1992 ____________________ August 24, 1992 ____________________ No. 92-1733 No. 92-1733 DELORES GONSALVES, ADMINISTRATRIX OF DELORES GONSALVES, ADMINISTRATRIX OF THE ESTATE OF MORRIS PINA, JR., AS THE ESTATE OF MORRIS PINA, JR., AS ADMINISTRATRIX, AND ON HER OWN BEHALF, ADMINISTRATRIX, AND ON HER OWN BEHALF, Plaintiff, Appellant, Plaintiff, Appellant, v. v. THE CITY OF NEW BEDFORD, MASSACHUSETTS, ET AL., THE CITY OF NEW BEDFORD, MASSACHUSETTS, ET AL., Defendants, Appellees. Defendants, Appellees. ____________________ ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS FOR THE DISTRICT OF MASSACHUSETTS [Hon. Andrew A. Caffrey, Senior U.S. District Judge] [Hon. Andrew A. Caffrey, Senior U.S. District Judge] __________________________ ____________________ ____________________ Before Before Cyr and Boudin, Circuit Judges, Cyr and Boudin, Circuit Judges, ______________ and Hornby,* District Judge. and Hornby,* District Judge. ______________ ____________________ ____________________ Harvey A. Schwartz with whom Robert A. Griffith and Schwartz, Harvey A. Schwartz with whom Robert A. Griffith and Schwartz, ___________________ ___________________ _________ Shaw & Griffith were on brief for appellant. Shaw & Griffith were on brief for appellant. _______________ Armand Fernandes, Jr. with whom Fernandes, Fraze & Finnerty were Armand Fernandes, Jr. with whom Fernandes, Fraze & Finnerty were _____________________ ____________________________ on brief for appellees. on brief for appellees. Robert A. Bertsche, Hill & Barlow and John Reinstein on brief for Robert A. Bertsche, Hill & Barlow and John Reinstein on brief for __________________ _____________ ______________ the Civil Liberties Union of Massachusetts and the New Bedford Minori- the Civil Liberties Union of Massachusetts and the New Bedford Minori- ty Action Committee as amici curiae. ty Action Committee as amici curiae. ____________________ ____________________ ____________________ ____________________ ____________________ *Of the District of Maine, sitting by designation. *Of the District of Maine, sitting by designation. Per Curiam. The present appeal requires us to deter- Per Curiam. __________ mine the constitutionality of a district court order enjoining plaintiff's counsel, Robert A. Griffith, Esquire, from appearing on television for any purpose during the pendency of plaintiff's civil rights action. For the reasons which follow, we vacate the order. BACKGROUND BACKGROUND __________ The underlying action, asserting claims under 42 U.S.C. 1983 and Massachusetts law, includes allegations of wrongful death, police brutality and race discrimination by the New Bedford police department and certain individual police officers, pursuant to a policy and practice tolerated by the city and various city and police officials. The parties currently are engaged in pretrial discovery. On May 15, 1992, defendant Police Chief Benoit filed a motion under Local Rules 83.2A and 83.2B, D. Mass. L. R. 83.2A, 83.2B, for (1) an order limiting out-of-court statements by all parties and their attorneys, (2) an order prohibiting public dissemination of discovery materials, and (3) any "special" orders the court might deem necessary. The motion alleged in conclusory fashion that plaintiff's attorney had cultivated widespread publicity about the case by releasing discovery materials to the media, holding a public rally and appearing on a local cable television talk show. During the television show, Attorney Griffith is alleged to have requested public support for 2 alleged victims of New Bedford police brutality, and to have urged anyone who had suffered brutality or discrimination in the past to come forward to help establish the "policy and practice" allegations in plaintiff's complaint. See Elliott v. Cheshire ___ _______ ________ County, N.H., 940 F.2d 7, 12 (1st Cir. 1991) (citing Monell v. ____________ ______ New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978)). ____________________________________ At a scheduling conference on June 1, the district court acceded to Benoit's request to be heard on the motion. Benoit's counsel summarized the relief requested, emphasizing Benoit's concern that, absent the requested relief, certain discovery materials currently sought by plaintiff might be disclosed publicly. In response, plaintiff's counsel, Mr. Griffith, alluded to the allegations about his television appear- ance. Griffith informed the court that the pending legal action had not been the subject of the television show, but that his remarks were made in response to a question the moderator asked about the case. Griffith defended his statements as "entirely legitimate" and not prejudicial to defendants. The district court orally directed Attorney Griffith not to appear on televi- sion for any purpose during the pendency of the case. Following the district court's denial of a motion to stay its order, Griffith filed a motion with this court for an emergency stay. See Fed. R. App. P. 8. We issued two partial ___ stays pending receipt of "particularized findings" from the district court, which were received on June 22. The district court's particularized findings were as follows: 3 1) The nature of the harm posed by Attorney Griffith's conduct is that it amounts to a poisoning of the jury pool to the prejudice of the defendant police officers. Given the fact that the defendants presented evidence of the proclivity of Attorney Griffith to garner publicity for his client in this ac- tion, the potential harm posed by Attorney Griffith's inclination to publicize the case could be extensive if left unchecked. 2) Less restrictive alternatives seem inade- quate to protect the interests threatened. As noted above, Griffith has repeatedly pub- licized information about the pending case in various mediums. Thus, a less restrictive protective order, such as one allowing him to be on television but ordering him not to discuss the case, would not be adequate in this instance. Furthermore, as indicated, in this instance, Griffith did not initiate the discussion of this pending case on the tele- vision show; he merely responded to a ques- tion posed to him. To allow him to appear on television, on the condition that he not initiate discussion on this matter, would not prevent this circumstance from happening again. Given the publicity in this case, his mere presence on television would tend to stimulate further discussion and publicity regarding this case, even if he himself refused to discuss it. 3) The proposed protective order will be effective in preventing the harm of poisoning the jury pool. To the extent that publicity in this case can be discouraged, the police officers stand a better chance of a fair trial on this matter. We expedited the appeal and stayed the district court order pending appeal. 4 DISCUSSION DISCUSSION __________ A. Presumption Against Prior Restraint A. Presumption Against Prior Restraint ___________________________________ We are met at the outset with a disagreement among the parties as to the appropriate criteria to be applied in balancing the right to free speech against the right to trial by an impar- tial jury. In particular, the parties urge divergent interpreta- tions of the recent Supreme Court decision in Gentile v. State _______ _____ Bar of Nevada, 501 U.S. ___, 111 S. Ct. 2720 (1991). _____________ Plaintiff, joined by amici curiae, the Massachusetts Civil Liberties Union and the New Bedford Minority Action Commit- tee, characterizes the challenged order as a prior restraint on the exercise of Griffith's First Amendment right to engage in political speech. A prior restraint on First Amendment rights traditionally carries a "heavy presumption" against its validity, especially if it chills comment on governmental proceedings. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 558-59 (1976). _____________________ ______ Advance censorship, it is reasoned, entails an irreversible sanction and strikes at the stability of our democratic system when it restrains political comment. Id. at 559-60. For these ___ reasons, plaintiff and the amici insist that the stringent test applicable to prior restraints upon the press should be applied to the prior restraint imposed on plaintiff's counsel in this case; that is, the order is to be overturned in the absence of a "clear and present danger" or a "serious and imminent threat" to 5 the orderly and fair administration of justice. Bridges v. _______ California, 314 U.S. 252, 263, 270 (1941). __________ Amici curiae distinguish Gentile on its facts. There _______ the Court upheld against a First Amendment challenge the standard in a Nevada disciplinary rule prohibiting attorneys from comment- ing on pending cases in circumstances presenting a "substantial likelihood of material prejudice" to the proceedings. As Gentile _______ involved subsequent sanctions against an attorney for commenting __________ _________ about a pending case, amici curiae reason that Gentile does not _______ diminish the First Amendment protection from prior restraints _____ __________ upon comment by counsel in a case of political importance to the public. Amici further argue that the "substantial likelihood" standard approved in Gentile represents the minimum constitu- _______ tional requirement for prior restraints on attorney speech. Accordingly, amici contend that Local Rules 83.2A and 83.2B are unconstitutional insofar as their "reasonable likelihood" stan- dard is less stringent than the "substantial likelihood" test adopted in Gentile. _______ Appellee Benoit, on the other hand, argues that the constitutional right to a fair trial before an impartial jury is entitled to no less, if not greater, protection than an attorn- ey's First Amendment right to free speech on matters involved in a pending judicial proceeding. Cf. Nebraska Press, 427 U.S. at ___ ______________ 561 (Bill of Rights did not assign priorities to First and Sixth Amendment rights, ranking one as superior to the other). Preju- dicial publicity, Benoit points out, might divert the trial from 6 its primary purpose "to adjudicate controversies, both crimi- nal and civil, in the calmness and solemnity of the courtroom . . . ." Sheppard v. Maxwell, 384 U.S. 333, 350 (1966) (citation ________ _______ omitted). As the Supreme Court reasoned in Gentile, 501 U.S. at _______ ___-___, 111 S. Ct. at 2743-45, the threat of prejudicial public- ity is greatest when it is generated by an attorney involved in the proceedings. An attorney, moreover, unlike the press, has a fiduciary professional obligation to preserve the integrity and fairness of judicial proceedings. Thus, Benoit urges that it is not improper to restrain extrajudicial comment by counsel if there is a "reasonable likelihood" that the fairness of the judicial proceeding would be prejudiced absent the restraint. The Supreme Court's approval of a lesser standard than "clear and present danger," Benoit says, supports the constitutionality of the lesser standard in Local Rule 83.2A, even though its wording is not identical to the rule approved in Gentile. Furthermore, _______ Benoit says, the reasoning in Gentile supports the district court _______ order insofar as it prohibits Attorney Griffith from making extrajudicial statements about the case.2 ____________________ 2The parties disagree also as to whether the district court order, prohibiting Griffith from appearing on television for any purpose, unconstitutionally interferes with plaintiff's alleged First Amendment and/or due process right to appeal to the public at large for evidence supporting her claim that defendants have engaged in a practice of depriving minority individuals of their constitutional rights. 7 B. Balancing Test B. Balancing Test ______________ We need not choose between these competing contentions at this juncture, as the challenged order fails under either. First, there was no sufficient showing of an actual threat to defendants' right to a fair trial. Second, the order provided ineffective protection from the perceived harm. Third, less restrictive conventional alternatives were not considered. 1. Threat of Harm 1. Threat of Harm ______________ As it recognized, the district court is under an affirmative duty to safeguard the due process rights of the parties before it by minimizing the adverse effects of prejudi- cial pretrial publicity in proceedings under its control. Gannett Co. v. De Pasquale, 443 U.S. 368, 378 (1979) (emphasizing ___________ ___________ district court duty to control the proceedings); Sheppard, 384 ________ U.S. at 333. See also Report of the Committee on the Operation ___ ____ _________________________________________ of the Jury System on the "Free Press-Fair Trial" Issue, 45 _____________________________________________________________ F.R.D. 391, 401 (1969) (revised, 87 F.R.D. 518 (1980)). The district court enjoys considerable leeway to select from among a variety of devices for meeting its difficult and important responsibility. Sheppard, 384 U.S. at 357-62. ________ At a minimum, however, a prior restraint can be justi- fied only if the prohibited speech poses an actual threat to the ______ right to a fair trial before an impartial jury. See In re Perry, ___ ___________ 859 F.2d 1043, 1050 (1st Cir. 1988) (a vague threat is not enough; there must be a "cognizable" compelling interest which 8 could be furthered by the restraint). Thus, no matter which recommended standard is used to evaluate the appropriateness of a prior restraint on the exercise of the right of free speech, there must be a sufficient showing of an actual threat to the right to a fair trial. United States v. Noriega, 917 F.2d 1543, _____________ _______ 1549 (11th Cir.) ("imminent danger" standard; First Amendment protections cannot be overcome by "conclusory" assertion that publicity might hamper fair trial), cert. denied, 111 S. Ct. 451 ____ ______ (1990); In re Dow Jones & Co., 842 F.2d 603, 609 (2d Cir.) ________________________ (employing "reasonable likelihood" standard; "gag" order justi- fied only if the exercise of the right of free speech "actually tramples upon Sixth Amendment rights"), cert. denied, 488 U.S. ____ ______ 946 (1988). Although we do not doubt that the district court acted "out of a legitimate concern, in an effort to protect the defen- dant's right to a fair trial," the record before us reveals no evidentiary basis for the conclusion that future appearances by Attorney Griffith would "poison[] the jury pool." Nebraska ________ Press, 427 U.S. at 569. There are no findings identifying the _____ substance of Griffith's remarks: whether, for example, he dis- paraged defendants or witnesses, mischaracterized evidence or in any way tended to prejudice the public perception. Moreover, were there proof, which we are unable to discern from the record, that Griffith "repeatedly publicized . . . the pending case in various mediums," it would provide an insufficient basis for the breadth of the present order. "Pretrial publicity even 9 pervasive, adverse publicity does not inevitably lead to an unfair trial." Id. at 554. A jury need not be entirely ignorant ___ of the case; all that the Constitution requires is a jury that is impartial. See Sheppard, 384 U.S. at 351; Dow Jones, 842 F.2d at ___ ________ _________ 603. We perceive scant basis in the record for concluding that Griffith's appearance on a local cable television station threatened pervasive impact on the attitudes of those who might be called as jurors. We note that a trial date has not yet been set. The jury pool in this case normally would be drawn from the nine counties comprising populous eastern Massachusetts. See ___ United States District Court, District of Massachusetts, Amended _______ Jury Plan (Sept. 6, 1989). On the present record, given the _________ remoteness of any trial date, the size of the available jury pool and the geographic diversity of the jury pool drawing area, a prediction that all publication of information about the case would poison the jury pool seems speculative at best.3 The Benoit motion included vague allegations of poten- tial harm to other pretrial interests which arguably might warrant protection (e.g., possible privacy interests, or privi- ____ lege against public disclosure, on the part of defendants and third persons; and undefined harm from plaintiff's counsel's ____________________ 3The only other publicity about the case which was brought to the district court's attention by Benoit's motion was contained in five articles appearing in New Bedford and Boston newspapers. Attorney Griffith's name does not appear in the articles and there is no indication that the order was crafted in reaction to the articles. 10 efforts to drum up support for litigation). Neither the district court, nor this court, has addressed the discovery-related matters raised by the Benoit motion. However, in order to provide an appropriate benchmark for identifying and weighing the interests involved and the sort of protection needed, the precise harm must be carefully delineated, Noriega, 917 F.2d at 1550, and _________ __________ _______ the restraint must be tailored narrowly to serve the particular interests warranting protection, see id. at 1549; see also ___ ___ ___ ____ Anderson v. Cryovac, Inc., 805 F.2d 1, 8 (1st Cir. 1986) (in case ________ _____________ involving allegations that city water supply had been poisoned, district court demonstrated appropriate "sensitivity to First Amendment concerns by striving to keep the protective order as narrow as possible," excepting from its scope disclosures to public health authorities as required in the public interest). The challenged order does not identify with the requi- site particularity a pretrial interest warranting the protection of its broad prior restraint upon First Amendment rights. See, ___ e.g., Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 (1984) ____ __________________ _________ (orders protecting against disclosure of otherwise private discovery materials may be permitted for "good cause" shown, where the restriction is carefully limited to discovery materials and the order does not affect materials obtained from other sources); Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 (1981) (order ____________ _______ restricting communication, as a means of protecting absent class members and potential class members, must be carefully drawn and based on a clear record and specific findings reflecting a 11 balancing of the need for the restrictions and protection of the parties' rights); Anderson, 805 F.2d at 6 (protective orders ________ prohibiting discovery abuse are subject to First Amendment scrutiny within framework of "good cause" requirement in Fed. R. Civ. P. 26(c)).4 2. Ineffectiveness of Order 2. Ineffectiveness of Order ________________________ The order is not tailored to protect against the per- ceived harm (poisoning the jury pool), as its overbroad prohibi- tion of any and all television appearances by Griffith facially restrains speech and other expressive conduct having no connec- tion with the pending case. In re Perry, 859 F.2d at 1050 ____________ (overbroad order cannot survive constitutional scrutiny); compare _______ Levine v. United States Dist. Court, 764 F.2d 590 (9th Cir. 1985) ______ _________________________ (in case applying "clear and present danger" standard, order prohibiting statements which "bear upon the merits to be resolved by the jury" is too broad, as it would prohibit statements posing no danger to the administration of justice), cert. denied, 476 ____ ______ U.S. 1158 (1986). "[D]evising the most effective preventive measure is not the proper goal. Rather, the goal is to craft measures that ensure an impartial jury without restricting First Amendment rights any further than absolutely necessary." Dow ___ Jones, 842 F.2d at 612 n.1. _____ ____________________ 4We note no suggestion that Griffith's statements threatened the secrecy of grand jury proceedings. Cf. Globe Newspaper Co. v. ___ ____________________ Pokaski, 868 F.2d 497, 509 (1st Cir. 1989) (public has no First _______ Amendment right of access to grand jury records, as secrecy is traditional and essential to system). 12 Furthermore, the order is too underinclusive to effect meaningful protection against the perceived harm. It restrains access to but one of several public information media on the part of one attorney in the case, leaving seven other attorneys and all twelve parties free to discuss the case in any forum. See ___ Nebraska Press, 427 U.S. at 565-69 (practical problems involved ______________ in predicting what information may in fact undermine impartiality of jurors, and dilemmas encountered in drafting effective orders which are not overly broad, call for careful advance consider- ation of alternative measures to counter threat to fair trial). We do not imply that a more inclusive order (or, indeed, any order) was indicated, but that the challenged order represented an inappropriate response in the circumstances presented. 3. Less Restrictive Alternatives 3. Less Restrictive Alternatives _____________________________ Finally, the district court did not discuss particular alternatives to limiting the exercise of Griffith's First Amend- ment rights. The case law identifies several alternative means of mitigating pretrial publicity, including change of venue, searching voir dire, sequestration of the jury, and emphatic jury instructions. Nebraska Press, 427 U.S. at 563-64; Sheppard, 384 ______________ ________ U.S. at 357-62. We recognize that restrictions directed to counsel or other trial participants may stand on a different footing than those directed to the press or public, Gentile, 111 _______ S. Ct. at 2742-44; Levine, 764 F.2d at 595-96, and that other ______ means of mitigating publicity may have costs of their own. 13 Gentile, 111 S. Ct. at 2745. Nevertheless, given the First _______ Amendment interests at stake and the breadth of the challenged order, we think an explicit consideration of alternatives to the restraint was required. Nebraska Press, 427 U.S. at 563; Dow _______________ ___ Jones, 842 F.2d at 611; Levine, 764 F.2d at 599-601. _____ ______ The district court order of June 1, 1992, is vacated. ____________________________________________________ 14