UNITED STATES of America, Plaintiff,

v.

Manuel Antonio NORIEGA, Defendant.

No. 88–0079–Cr.

United States District Court,
S.D. Florida.

Dec. 4, 1990.

**1038**

Norman A. Moscowitz, Sonia Escobio O'Donnell, Marcella Cohen, Asst. U.S. Attys., Miami, Fla., for U.S.

Frank A. Rubino, Coconut Grove, Fla., Jon May, Steven Kollin, Miami, Fla., for Noriega.

Sanford L. Bohrer, Karen W. Kammer, Thomson Muraro Bohrer & Razook, P.A., Miami, Fla., for Miami Herald Pub. Co.

Robert C. Bernius, Nixon, Hargrave, Devans & Doyle, Washington, D.C., for Gannett Satellite Information Network, Inc. (USA Today).

Terry S. Bienstock, Frates Beinstock & Sheehe, Miami, Fla., Daniel M. Waggoner, Stuart F. Pierson, Davis Wright Tremaine, Washington, D.C., Steven W. Korn, Turner Broadcasting System, Inc., Atlanta, Ga., for Cable News Network, Inc. and Turner Broadcasting System, Inc.

## ORDER

HOEVELER, District Judge.

THIS CAUSE is before the court on the motion of The Miami Herald Publishing Company; Post–Newsweek Stations, Florida, Inc., d/b/a/ WPLG Channel 10; Gannett Satellite Information Network, Inc. (USA Today); Gannett Co., Inc.; and the Associated Press (collectively "Movants") for immediate access to transcripts of the audiotapes of telephone conversations of Defendant Manuel Noriega made by the federal government and obtained by Cable News Network ("CNN"). The transcripts were made by the court from audiotapes produced by CNN in compliance with a court order. CNN, asserting a proprietary interest in the transcripts, opposes the motion and urges the court to either destroy the transcripts or surrender them to CNN for its exclusive use. Alternatively, CNN urges that, should the court grant the Movant's motion, the court stay its order pending review by the Eleventh Circuit.

## I. BACKGROUND

This action comes on the heels of the court's decision to lift its temporary restraint prohibiting CNN from broadcasting taped conversations between Noriega and his defense team in its possession.

On November 7, 1990, Defendant Manuel Noriega filed an emergency motion seeking to enjoin CNN from broadcasting tape recordings of Noriega's attorney-client conversations. The recordings were made by officials at the Metropolitan Correctional Center ("MCC") where Noriega is currently incarcerated and obtained by CNN from an undisclosed source. Noriega learned that CNN possessed at least one attorney-client conversation when CNN appeared at the office of Noriega's lead counsel and played a tape of a conversation between Noriega and certain members of his defense team. The conversation involved discussion of two potential government witnesses in the underlying criminal prosecution of Noriega for narcotics-related offenses. According to Noriega's motion, CNN notified defense counsel that it possessed seven tape recordings containing several of Noriega's conversations made from MCC, and which it apparently intended to broadcast on national television.

On November 8, at 8:30 a.m., the court heard argument on the motion and subsequently entered a temporary restraining order prohibiting CNN from broadcasting Noriega's attorney-client conversations until the court could review the tapes to determine whether the broadcast of Noriega's conversations with his defense team would impair his right to a fair trial. Accordingly, the court ordered CNN to produce the tapes for the court's review prior to its determination on the merits of Noriega's motion.

CNN immediately appealed the court's restraining order to the Eleventh Circuit, arguing that the order imposed an unconstitutional prior restraint on publication of newsworthy information. While CNN's appeal was pending before the Eleventh Circuit, CNN repeatedly broadcast the attorney-client conversation identified by Noriega in his motion for an injunction. On November 10, the Eleventh Circuit upheld the Court's temporary injunction and ordered CNN to turn its tapes over to this court for *in camera* inspection. CNN then filed an application to stay this court's restraining order and a petition for writ of certiorari to the United States Supreme Court, both of which were denied on November 18, 1990. Two days later, CNN delivered copies of its tapes to the court.

In order to establish a written record of the taped conversations and assist the court in reaching its determination, the court directed that the tapes be transcribed and translated by court-employed translators. Because the recorded conversations were in Spanish, the court instructed the translators to produce both a Spanish transcript and an English translation. On November 27, the day the transcripts were completed, the court made the English transcript available to Noriega's defense counsel, CNN, and a team of U.S. attorneys established to facilitate government representation on all matters relating to CNN's tapes without involving members of the prosecution team. CNN had opposed allowing Noriega's counsel and the government to review the transcripts. This objection was overruled by the court, which determined that Noriega and the government would need to know the exact contents of the conversations in order to meet the heavy burden of proving that publication would so damage Noriega's right to a fair trial that a prior restraint was justified.

Three copies of the English transcript were kept in the court's chambers, where review by the parties took place. The parties were allowed to take notes, but they were not permitted to make their own copies nor to remove from chambers the copies provided by the court.

The following morning, on November 28, the court heard argument on the merits of Noriega's motion for injunction. The hearing was brief. Noriega's counsel withdrew the motion, stating that the issue was moot since CNN's tapes contained only one attorney-client conversation, which had already been broadcast by CNN. The government stated that it also had no objection to CNN's broadcast of its tapes. The court's own review led it to conclude that CNN's tapes contained *two* conversations falling within the attorney-client realm. As to the conversation already broadcast by CNN, the court agreed that the issue was moot and that a restraint on further publication of this conversation would serve no purpose. The court determined that the second conversation was so cryptic and disjointed that its publication could not arguably said to be prejudicial and certainly not of such a damaging nature as to justify a prior restraint. Accordingly, the court orally vacated its order restraining CNN from broadcasting Noriega's attorney-client conversations. The next day, Movants filed their motion for access to the court-produced transcripts of CNN's tapes. It is the court's understanding that, as of the date of this Order, CNN has broadcast very little of Noriega's conversations beyond that which it had already broadcast prior to the court's decision to lift its restraint on publication.

## II. DISCUSSION

As is evident from the events leading up to this motion, the court is by now well-acquainted with CNN and its vigorous advocacy of the First Amendment and the public's right to know newsworthy information—principles for which this court has the utmost regard and which it endeavors to uphold. It therefore comes as somewhat of a surprise to have CNN, the forceful proponent of a free press operating without judicial intervention, return to this court urging that the press and public be denied a right of access to the very information which CNN has argued is of immediate public interest. It appears that CNN's posture on the public's right to know is as wide-ranging and up-to-the-min-

ute as its news coverage. "Around the World in 30 Minutes" indeed.

According to CNN, this is not a clash of First Amendment rights, but a display of simple competitive jealousy. Thus, CNN argues, although Movants' arguments are adorned "in their most glittering array of First Amendment finery," the Movants simply seek to reap the benefits of CNN's enterprising journalistic endeavors. CNN points out that the Movants vigorously supported CNN's resistance to turning over its tapes for the court's review in *amicus curiae* briefs filed in the United States Supreme Court. The suggestion is that Movants, who now seek access to the contents of those same tapes, are 'turn-coats', standing on First Amendment principles only when it suits them. On this point, the court is compelled to remark that recent experience suggests this is not a particularly isolated phenomenon. However, CNN does have a legitimate interest in not losing its competitive advantage by virtue of its compliance with a court order, and this interest must be considered against the right of access advanced by the Movants.

■ The court notes at the outset that the press has no First Amendment right of access to the transcripts at issue. Although the press and public have a First Amendment right of access to criminal trials, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the right of access to judicial records is not of constitutional dimension but rather derives from common law. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 608–10, 98 S.Ct. 1306, 1317–19, 55 L.Ed.2d 570 (1978). Thus, in contrast to the compelling justification required for closure of criminal trials, *Globe Newspaper Co. v. Superior Court*, 457 U.S. at 606–07, 102 S.Ct. at 2619–20, the trial court has broad latitude

where only the common-law right of access to court records is implicated. In deciding whether to allow inspection and copying of judicial records, the trial court is left to its "sound discretion ... a discretion to be exercised in light of the relevant facts and circumstances." *Nixon v. Warner Communications*, 435 U.S. at 599, 98 S.Ct. at 1312–13. Notwithstanding this discretion, a presumption of openness attaches to judicial records, and this presumption in favor of public access must be balanced against any competing interest advanced. *Id.* at 602, 98 S.Ct. at 2617–18; *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir.1983).

CNN argues that the court need not engage in any balancing of interests because the presumption of access does not apply here for two reasons. First, CNN maintains that the transcripts are the sole property of CNN and therefore do not constitute judicial records to which the press or public has any right of access. Second, CNN argues that the presumption of access does not apply because the transcripts were never a part of the public record, but were kept under seal for the court's *in camera* inspection.

■ CNN's assertion that the transcripts belong to CNN "and only CNN" is somewhat remarkable given that the transcripts were translated and transcribed by court-employed interpreters [1] at public expense. CNN played no role in the preparation of the transcripts or their translation from Spanish to English, other than to provide the tapes from which the transcriptions were made, and to loan the court a machine, which CNN has suggested the court pay rent on, suited to play Beta broadcast tapes.

Recognizing that any proprietary interest of CNN in the transcripts can therefore only derive from the tapes themselves, CNN advances several novel arguments all premised on CNN's presumed ownership of the tapes' content.[2] Thus, CNN argues

---

1. The court is greatly appreciative of the expertise and diligence of Irene King–Tomassini and Victoria Isen in transcribing and translating the often inaudible and unintelligible tapes, day and night, over a six-day period.

2. CNN variously argues, for example, that the transcripts are the "alter-ego's" of the tapes; that the transcripts are "a videotape player for viewing tape contents"; and that the transcripts re-

that "the substantive content of the transcript is merely the content of CNN's tapes; and for that reason, the transcript is the property of CNN and only CNN."

The common thread underlying all of CNN's arguments is its assumption that CNN owns the content of the tapes, i.e., Noriega's conversations, in its possession. The court, however, fails to see how CNN can claim ownership to Noriega's conversations or, more precisely, the recordings of his conversations. If any entity owns the contents on the tapes, it is the government, which monitored Noriega's conversations and recorded them onto tapes, copies of which eventually came into CNN's possession.[3] Moreover, Noriega's interest in his own conversations must take precedence over any proprietary claim asserted by CNN. CNN played no part in the making or recording of the conversations; it did not interview Noriega to obtain the conversations, nor did it record the conversations. It has no copyright to the tapes. In short, CNN did absolutely nothing to elicit the information it now claims to own.[4] The contents of the recordings, though perhaps lawfully obtained by CNN, though certainly not lawfully given to CNN, nevertheless remain the property of the federal government. At most, then, CNN is simply the current possessor—perhaps one of many current possessors—of property belonging to someone else. Thus, CNN's deductive reasoning that the transcripts belong to CNN because "the substantive content of the transcript is merely the content of CNN's tapes" collapses, for it leaves out

the crucial additional fact that the content of CNN's tapes is merely the content of the government's original recordings. Once it is recognized that the conversations in CNN's possession are mere reproductions of the government's recordings, then, by CNN's own reasoning, the transcripts of those conversations belong to the government, not to CNN. The government, moreover, does not object to release of the transcripts. At the hearing on the motion, the government and Noriega, both of whom have an interest in the recordings superior to CNN's, took no position on Movant's request for access to the transcripts.

CNN comes closest to establishing a proprietary interest in the transcripts by narrowing its argument to a claim that the tapes contain "uniquely organized and compiled aural content." A cursory examination of the facts, however, belies the insubstantial nature of such a claim: General Noriega and the other recorded speakers organized the aural content as they spoke, and the United States Government compiled it. CNN's assertion that it uniquely organized the contents of the tapes is wholly unsupported. Beyond its bald assertion of uniqueness, the court is provided with no further information from which to conclude that the tapes are not a simple duplicate of the government's recordings. Even if CNN somehow contributed to the editing process, the court, after reviewing the transcripts, fails to conceive how the organization of the conversations is so unique as to give rise to a new and distinct property

---

veal privileged reporter's notes and CNN trade secrets.

**3.** Prior to receipt of the tapes, the court held out the possibility that the tapes were recorded from a location other than MCC since CNN would not represent that the tapes were recorded by MCC officials. It now appears, however, that the tapes were indeed recorded at MCC, as portions of the tapes contain the voice of an MCC guard identifying the recordings as monitored and recorded at that facility.

**4.** For this reason, CNN's claim that the tapes contain privileged reporter's information is wholly without merit since, as indicated, the conversations were not made or recorded in response to any journalistic effort on CNN's

part. As the conversations in CNN's possession involve no input on its part, this is not a case of invading a reporter's notes or compelling a reporter to come forward with information she has gathered in the course of writing a story. See e.g., United States v. Cuthbertson 651 F.2d 189 (3rd Cir.1981); United States v. Criden, 633 F.2d 346 (1980). Rather, the Movants simply seek access to conversations recorded by the government, copies of which CNN happens to possess. Disclosure of the contents of the government's recordings would not violate any journalistic privilege, since the recordings do not contain any privileged reporter's information.

interest.[5]

By the above reasoning, then, all of CNN's various arguments based on a proprietary interest necessarily fail, if not on their face, by elementary implication.[6]

■ The court, moreover, finds that the transcripts are properly considered to be judicial or court records. Contrary to CNN's assertions, whether the transcripts were formally entered on the docket or placed in the court file is not dispositive as to whether they are judicial records to which the press has a right of access. *See Newman v. Graddick, supra* (press had right of access to lists of prisoners district court used in considering which prisoners to release from overcrowded jails, even though the lists were not part of the court file). The transcripts of Noriega's conversations were relied on by this court in reaching its determination as to whether disclosure of their contents would impair Noriega's right to a fair trial. Indeed, the entire purpose of requiring CNN to produce the tapes was to enable this court to make the factual findings necessary to rule on the merits of Noriega's motion for an injunction on publication. The tapes' contents therefore provided the basis for the court's decision to lift its restraining order on the tapes' broadcast. In this function, the transcripts served as an important part of the record before this court, and would have been submitted to the Eleventh Circuit and the Supreme Court as part of the record had this court's order vacating its restraint been appealed.

CNN's argument that the transcripts are 'judicial work product' rather than court records is unpersuasive. In likening the transcripts to a law clerk's bench memo or a judge's notes, to which the press would have no right of access, CNN mistakenly characterizes the transcripts as somehow the product of judicial thought processes. To the contrary, the contents of the transcripts are wholly devoid of judicial thought or input. They are, unmistakably, exhibits. And, as such, they are no more a product of judicial thought than any other deposition, affidavit, or transcript received for purposes of fact-finding in a legal proceeding.

■ CNN also argues that a right of press access does not apply here because the tapes and transcripts were submitted for *in camera* review. CNN cites several cases to this effect, and in particular relies on *United States v. Corbitt*, 879 F.2d 224 (7th Cir.1989), where the Seventh Circuit held that the presumption of access to judicial records does not apply to materials properly submitted to the court under seal. As the court stated:

Where judicial records are confidential, the party seeking disclosure may not rely on presumptions, but must instead make a specific showing of need for access to the document. Of course, the public's right to inspect judicial documents may not be evaded by the wholesale sealing of court papers. Instead, the district court must be sensitive to the rights of the public in determining whether or not any particular document, or class of documents, is appropriately filed under seal. The question then becomes whether pre-

---

5. Because CNN's tapes are neither unique nor in CNN's exclusive possession, its reliance on *Zacchini v. Scripps–Howard Broadcasting Company*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (the "human cannonball" case), for the notion that there is a property right in the very exclusivity of possession, is of little help here.

6. For example, CNN's tapes cannot contain trade secrets, because their content is owned by another entity: the United States Government—which has voiced no objection to this court's granting the general public access to the transcripts.

In passing, CNN has also argued that disclosure of the transcripts would reveal CNN's con-

fidential source. Although CNN asserts this confidentiality as grounds for denying access to the conversations, it has provided no basis to support its speculative assertions that the identity of its confidential source might be evident from the transcripts. CNN has not sought to press this point very far in either its brief to the court or during oral argument, leading the court to conclude that the issue of confidentiality is more a red herring than a real objection. Moreover, the court's own review of the transcripts provides no basis from which to conclude that disclosure would reveal the identity of CNN's source of production.

sentence reports are properly filed under seal;....

*Id.*, at 228. Similarly, in *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir.1977), the court held that "[t]he press has no right of access to exhibits produced under subpoena and not yet admitted into evidence, hence not in the public domain."[7]

While these cases stand for the sound proposition that press access is limited by the confidential or *in camera* nature of court records, they are irrelevant to the transcripts at issue, since the *in camera* aura surrounding the transcripts ended with the court's decision to lift its restraint on CNN's broadcast of the tapes. The purpose behind the *in camera* review was to permit the court to determine whether publication of the tapes would cause irreparable damage to Noriega's right to a fair trial. The tapes and the transcripts were kept under seal only for the limited purpose of ensuring that their contents not be disseminated until the court could make this determination. Once the court determined that the tapes posed no threat to Noriega's fair trial rights, the motivating reason for closure no longer existed, and the court, in lifting its restraint on CNN's publication of Noriega's attorney-client conversations, effectively removed the tapes' contents from the *in camera* process. At that time, the presumption of public access attached to the transcripts.

■ Having concluded, then, that a presumption of access applies to the transcripts, the court must balance the factors favoring access against CNN's competing interests. In locating the public interest in access to the transcripts, the court need not look much further than the arguments previously made by CNN in its opposition to the court's temporary restraining order. As CNN has noted, the question of the government's possibly improper taping of Noriega's conversations, as well as the broader subject of the government's conduct in a case which may very well pose a strong test to the fairness of this country's judicial system, is of profound importance to the public. From the moment Noriega was apprehended and brought to this country to face criminal charges, the question continuing throughout this case has been whether a fair trial is possible in these circumstances. That question has recently been thrust to the forefront of public attention with the disclosure that the government has taped some of Noriega's attorney-client conversations. As CNN has previously submitted, the content of the conversations monitored by the government is as important and newsworthy as the fact of the recording, revealing to the public the extent, if any, to which a criminal defendant's right to a fair trial may have been compromised or put in jeopardy by government conduct.

Moreover, the right of access to judicial records "is important if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system." *Newman v. Graddick*, 696 F.2d at 796. Thus, the right of access serves not only as an institutional check on government conduct, but also as a means by which the public can monitor, and hopefully maintain confidence in, the workings of the judicial system. *See Wilson v. American Motors Corp.*, 759 F.2d 1568, 1570 (11th Cir.1985) (noting that the presumption of access to judicial records has been premised on the importance of preserving 'the public's right to monitor the functioning of our courts.') Though this institutional function has more often been discussed in the context of access to criminal trials rather than court records, the policies underlying open trials provide some guidance where the common law right of access to records is at issue.

In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), Chief Justice Burger, writing for the plurality, stressed that open trials served the interests of the public as well as the defendant. As he observed:

---

7. *Gurney* is distinguishable from this case in that the transcripts at issue were considered by this court and a part of the court record, in a way that the unintroduced exhibits in *Gurney* were not. Moreover, *Gurney* does not disturb the proposition that disclosure of judicial records is within the court's discretion.

**1044**

It is not enough to say that results alone will satisfy the natural community desire for "satisfaction." A result considered untoward may undermine public confidence, and where the trial has been concealed from public view an unexpected outcome can cause a reaction that the system at best has failed and at worst has been corrupted. *To work effectively, it is important that society's criminal process "satisfy the appearance of justice." Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), *and the appearance of justice can best be provided by allowing people to observe it.*

*Id.* at 571–72, 100 S.Ct. at 2824. (emphasis added).

In *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), the Court again gave emphasis to the structural function served by public access to criminal trials:

[T]he right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And, in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.

*Id.* at 606, 102 S.Ct. at 2620.

Without elevating the common law right of access to judicial records to the constitutional plane on which the right of access to criminal trials rests, the court views the considerations supporting open trials as particularly relevant in a case of this nature, where our judicial system is clearly on display. Ever since Noriega was indicted by a federal grand jury sitting in Miami, this court has recognized the controversial nature of this case and has sought to make public all aspects of these proceedings to the extent legally permissible. That approach must likewise inform the court's decision here.

As indicated above, this court's determination that publication of Noriega's conversations in CNN's possession would not impair Noriega's right to a fair trial was based on review of the transcripts to which Movants now seek access. The Movants as well as the general public may view that decision as particularly important and deserving of public review in light of the significance accorded Noriega's right to a fair trial by this court as well as the by the Eleventh Circuit and the United States Supreme Court. Yet if this court's actions in this highly-publicized matter are to be accorded any meaningful public scrutiny, then the public should have access to *all* of the contents of the transcripts which formed the basis for the court's ruling, and not simply those small portions which CNN chooses to air. The public's role as a check on the integrity of the judicial process should not rise or fall on the whims of CNN's programming needs.

Finally, the contents of CNN's tapes may be of interest as a historical footnote to the temporary restraint on CNN's broadcast imposed by this court. The members of the press and the various First Amendment scholars who view the temporary restraint as of significant import may well be interested in probing the newsworthy value of the tapes upon which CNN staked its First Amendment claim, and the contents of which CNN initially refused to disclose to the court, thereby necessitating a prior restraint on publication.

In contrast to the interests favoring access is CNN's interest in exclusive media possession of the Noriega conversations. Even though CNN can claim no property right to the contents of the tapes in its possession, there is no question that CNN's journalistic enterprise in securing the tapes from its confidential source is the only reason Movants are able to assert a right of access. That CNN should lose its competitive advantage over other news organizations by virtue of its compliance with a court order requiring production of the

tapes seems fundamentally unfair. In its effort to reach a just result which would serve the interests of both the public and CNN, and keeping in mind that disclosure of the transcripts is within the court's discretion, the court has painstakingly considered CNN's interest in reaping the fruits of its journalistic efforts. It is, however, the decision of this court that the transcripts be made a part of the public record. In reaching this decision, the court cannot help but note that six days have passed since the court lifted its restraint on CNN's broadcast of Noriega's attorney-client conversations. During this time, CNN has had more than ample opportunity to 'scoop' its competitors by airing the conversations in their entirety. Instead, CNN has, for reasons unknown, declined to broadcast the vast majority of the conversations in its possession. Of course, CNN may publish or not publish, as it wishes. And this court does not propose to interfere with CNN's editorial judgement. But CNN's reluctance, over a significant period of time, to broadcast the conversations can only diminish it asserted interests in primacy and exclusivity of publication. At bottom, CNN asks the court to defer not to its right to publish an exclusive story, but rather to its 'right' to prevent the public, if it so wishes, from gaining access to information of public concern. Though the court respects CNN's right not to publish, it nonetheless declines to accord CNN such absolute and unfettered control over access to information which, in the court's discretion, should be made available for public review.

## III. CONCLUSION

For the reasons so stated, it is ORDERED AND ADJUDGED the motion for access is hereby GRANTED; it is further ORDERED AND ADJUDGED that the transcripts will not be entered into the public record until Thursday, December 6, 1990, thereby allowing CNN to appeal to the Eleventh Circuit for a stay of this Order.

DONE AND ORDERED.