UNITED STATES of America,

v.

Paul Jennings HILL.

No. 94–03118–RV.

United States District Court,
N.D. Florida,
Pensacola Division.

Sept. 16, 1994.

Maureen Duignan, Maureen Duignan, P.A., Pensacola, FL, Roderick D. Vereen, Roderick D. Vereen, P.A., Miami, FL, for defendant.

Paul Jennings Hill, Pensacola, FL, pro se.

David Lee McGee, Asst. U.S. Atty., U.S. Dept. of Justice, Tallahassee, FL, for U.S.

### ORDER TO ENSURE FAIR TRIAL

VINSON, District Judge.

The above-styled criminal proceeding is now pending in this United States District Court. I take judicial notice that the crime for which the defendant in this case is accused has received extensive local and national publicity, and that such publicity will almost certainly continue. Also, prior to the time of the acts for which he is charged, the defendant made numerous inflammatory statements to the media concerning the subject matter of this case. Because this case is and will be highly scrutinized by the media, I find it necessary to take steps to preserve the right of defendant Hill to a fair trial by an impartial jury by shielding jurors and potential jurors from prejudicial statements. The appropriate steps in this case consist of (1) the prohibition of certain extrajudicial statements by the attorneys and the defendant, and (2) sequestration of the jury.

■ Extrajudicial statements of counsel and parties are likely to interfere with the rights of the accused to a fair trial by an impartial jury, thereby violating the fundamental right guaranteed by the United States Constitution. Attorneys "have historically been 'officers of the courts.'" *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975). They have a legal and an ethical responsibility to safeguard the right to a fair trial. Local Rule 15(B) cautions counsel about this responsibility and is binding on attorneys practicing before this Court.

■ Defendants do not stand in the same posture, although they have a very real and substantial interest in being assured of fair trial. Certainly the Court has the duty to take such action as is reasonably necessary to safeguard this precious right of fair trial guaranteed by our Constitution. Although defendant Hill has freedom of speech, protected under the First Amendment, the courts have held that the Sixth Amendment right to a fair trial is stronger in cases of likely prejudice from publicity. "[W]hen First Amendment claims impinge upon the Sixth Amendment right to a trial by an impartial jury, asserted First Amendment interests must yield to the 'most fundamental of all freedoms,' the right to a fair trial for the accused." *The News–Journal Corp. v. Foxman,* 939 F.2d 1499, 1512 (11th Cir.1991).

Moreover, to guarantee defendants their right to a fair trial, "[t]he Court has placed an *affirmative duty* on trial courts to guard against prejudicial pretrial publicity." *United States v. Noriega,* 917 F.2d 1543, 1549 (11th Cir.1990) (emphasis added). As the Supreme Court of the United States has succinctly stated:

> To safeguard the due process rights of the accused, a trial judge has the affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures

even when they are not strictly and inescapably necessary. *Gannett Co. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979). This Court must take protective measures in part because of the need to shield the jury from prejudicial external information. "The capacity of the jury eventually empaneled to decide the case fairly is influenced by the tone and extent of the publicity...." *Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683, 695 (1976).

■ Although an order restraining the news media, in advance of publication, from reporting facts about the trial or the defendant, violates the First Amendment guaranty of free press, *Nebraska Press Assoc., supra,* an order so restraining trial participants is constitutional as long as properly justified. *In re Application of Dow Jones & Co.,* 842 F.2d 603, 610 (2nd Cir.1988), *cert. denied,* 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988); *Radio & Television News Ass'n v. United States District Court,* 781 F.2d 1443 (9th Cir.1986). Most courts require that pretrial publicity pose a "reasonable likelihood" of prejudicing the defendant's right to a fair trial. *In re Russell,* 726 F.2d 1007, 1010 (4th Cir.1984); *In re Application of Dow Jones & Co.,* 842 F.2d 603, 610 (2nd Cir.1988), *cert. denied,* 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988); *Radio & Television News Ass'n v. United States District Court,* 781 F.2d 1443 (9th Cir.1986); *United States v. Tijerina,* 412 F.2d 661, 666 (10th Cir.1969). *See also Central South Carolina Chapter, Soc. of Prof. Journalists, Sigma Delta Chi v. United States District Court,* 551 F.2d 559, 562 n. 3 (4th Cir.1977) (favored "reasonable likelihood" test in dicta). The Sixth Circuit has utilized a "clear and present danger" standard. *CBS Inc. v. Young,* 522 F.2d 234 (6th Cir.1975); *United States v. Ford,* 830 F.2d 596, 598 (6th Cir.1987).[1] Although the Eleventh Circuit has noted the differing standards, it has expressly declined to adopt a standard. *See News–Journal Corp. v. Foxman,* 939 F.2d 1499, 1515 n. 18 (11th Cir. 1991). However, I conclude that under any of these standards, defendant Hill's right to a fair trial is sufficiently endangered to warrant precautions.

This case has received continuous news coverage from its inception because of its controversial nature, and will undoubtedly continue to receive such coverage. Also, the publicity accompanying the defendant's connected murder case in state court has carried over to this case. The fact that this case has as its subject matter the second murder of an abortion provider in Pensacola has intensified public interest in details of the matter. As to defendant Hill, his past willingness to publicly promote his controversial views necessitates this order as it applies to him.[2] Any further statements made by the defendant on the subject of abortion would have an inflammatory effect seriously prejudicing his right to trial before a fair and impartial jury.

■ I have considered other alternatives to the present order, and find that no lesser alternative (or combination of lesser alternatives) would ensure the defendant's right to a fair trial by an impartial jury. Because the publicity surrounding the facts of the case is not merely local, but national, change of venue would serve no purpose. Nor would postponement of the trial be sufficient because of the likelihood of continuing publicity. *See Levine v. United States District Court,* 764

---

1. The Seventh Circuit has held that "before a trial court can limit defendants' and their attorneys' exercise of first amendment rights of freedom of speech, the record must contain sufficient specific findings by the trial court establishing that defendants' and their attorneys' conduct is 'a serious and imminent threat to the administration of justice.'" *Chase v. Robson,* 435 F.2d 1059, 1061 (7th Cir.1970) (quoting *Craig v. Harney,* 331 U.S. 367, 373, 67 S.Ct. 1249, 1253, 91 L.Ed. 1546 (1947).

2. I take judicial notice of a few of the media sources to whom the defendant in the past has made inflammatory statements concerning the killing of abortion providers. Hill has made such statements on television, *CNN News* (CNN television broadcast, February 20, 1994); *Nightline* (ABC television broadcast, December 8, 1993); radio, *All Things Considered* (National Public Radio broadcast, February 24, 1994); and in print. *Suspect In Doctor's Death On Parole From Life Term,* Orlando Sentinel, Sept. 8, 1993, at A8; *Abortion Physician's Death: Random or Not?,* St. Petersburg Times, Aug. 24, 1993, at 1A; *In Fla., More Than Murder On Trial,* Newsday, Feb. 28, 1994, at News 7.

F.2d 590, 600 (9th Cir.1985). Also, neither voir dire nor jury instructions can sufficiently "address the threat to judicial integrity posed by prejudicial extrajudicial statements." *Id.; see News–Journal Corp. v. Foxman,* 939 F.2d 1499, 1513 n. 16 (11th Cir.1991). Either by themselves, or taken as a whole, these alternatives cannot solve the problem created by the publicity accompanying this case. However, prohibition of extrajudicial statements by the attorneys and the defendant, together with sequestration of the jury, provide an adequate means of ensuring that extensive publicity will not prejudice the Sixth Amendment rights of the defendant. These two methods, while not interfering with the right of the press to publicize the trial, will help prevent the pre-trial disclosure of facts in the case to potential jury members and diminish the effect of news reports on the jury, once it has been selected.

For the reasons set forth above, I am convinced that if the two methods I have selected are not utilized, the defendant's right to a fair trial will be in clear jeopardy. I emphasize that issuance of this order is made necessary because of the peculiar nature of this case and the strong likelihood of damage to the defendant's right to fair trial and to the due administration of justice.

Accordingly, it is now **ORDERED:**

Until after the conclusion of the trial of this case in the United States District Court, the defendant and counsel for the government and for the defendant, as well as any office associates of counsel, shall not make any public statement, written or oral, concerning this case, or otherwise release or authorize the release of information or opinion in connection with this case (1) to any person associated with a public communications media, or (2) to any person in a manner that a reasonable person would expect to be communicated to a public communications media. However, nothing in this order shall prohibit any individual from stating, without elaboration or characterization: (a) the general nature of an allegation or defense; (b) information contained in the public record; (c) the scheduling or result of any step in the proceedings; or explaining, without characterization, the contents or substance of any motion or step in the proceedings, to the extent such motion or step is a matter of public record.

In addition, to insure the defendant a fair trial by an impartial jury, and to insulate that jury from any extrajudicial statements and other matters which might interfere with its ability to render a fair and impartial verdict in the trial of this case, and to set out certain procedures to be followed during the trial, it is now further ORDERED:

(1) The jurors in this case, upon being empaneled, shall be sequestered, and shall thereafter be kept in the custody of the United States Marshal for the Northern District of Florida at such safe and convenient place as the Marshal in his discretion shall arrange.

(2) The Marshal shall keep the jurors separated from the public and shall not permit non-jurors to converse with or to come in contact with any member of the jury, except as otherwise provided by this order.

(3) Authorized personnel attending the jury shall not converse with the jurors except as may be necessary in carrying out the obligations imposed by this order, and in no event shall such personnel comment in any way whatsoever upon anything related to this trial in news reports, or upon the defendant, any counsel, the government, the witnesses, the testimony, the exhibits, or the issues in this case, either to, or in the presence of, any juror.

(4) Any communication with the Court by the jury or any individual juror shall be made in writing, and that writing shall be placed in a sealed envelope, given to the attending Deputy Marshal, and shall be promptly delivered to the Court.

(5) The Marshal shall make all appropriate arrangements for the transportation of the jurors to and from the United States Courthouse, 100 North Palafox Street, Pensacola, Florida; to and from the jury's place of lodging; and to and from any restaurants where the jurors may take their meals.

(6) During the period of sequestration, the Marshall shall provide to each of the jurors

and alternate jurors so sequestered, breakfast, luncheon, and dinner meals.

(7) During the period of sequestration, the Marshal shall also make provision to insure that during the evening hours after the evening meal, and at any other times in the Marshal's discretion, there will be available to those sequestered jurors who so desire, at the cost of the government, some type of light refreshments.

(8) After the trial has been recessed for the day, any juror so desiring may have alcoholic beverages between the hours of 6:00 p.m. and 11:00 p.m. each night; provided that the total amount of such beverages consumed by any juror each night shall not exceed two cocktails, glasses of wine, or bottles of beer; and further provided that the cost of such beverages shall be paid by the individual juror.

(9) When the jurors have completed their evening meal and are returned to the place of lodging designated by the Marshal, and at all other times that the jurors shall be within the custody of the Marshal, except while the jurors are sitting at trial, the following conditions shall apply:

*(a) No telephone calls shall be allowed to any jurors, either incoming or outgoing, except as otherwise specifically allowed by the Court on application. Any reasonable telephonic messages may be made or received by the jurors to or from their next of kin through the Marshal.*

*(b) The jury while sequestered shall be permitted to read current printed news media; provided however, that before providing such materials to the jurors, the Marshal shall read the materials and excise all references to this trial or this case, to the defendants, to any counsel in this case, or to any matters that may be the subject of testimony in this case. The Marshal is directed to construe materials in favor of excision, and is advised to bring such questions to the attention of the Court for resolution. Books and magazines unrelated to criminal trials or to any of the matters described above may be brought by the jurors to their place of lodging.*

*(c) The Marshal shall insure that television and radio facilities are made available to the jurors at the place of lodging for viewing and listening, but shall take all necessary measures to preclude any viewing and listening of all newscasts and other news programs which have a substantial likelihood of containing news elements concerning this trial or any matter or person described in paragraph (b), above, and the Marshal shall also insure that the jurors avoid viewing or listening to any type of media program in which news elements of this trial or any matter or person described in paragraph (b), above, might arise.*

*(d) To the extent that the Marshal can reasonably and feasibly do so, the Marshal shall permit visits to the jurors by close relatives and persons who may have a particular need to visit any juror, at times when the jurors' attendance in court is not required. For this purpose the Marshal shall arrange, at the place of lodging, a suitable large visiting place in which such visits may occur during reasonable hours at times when the Court is not in session. In the event that the number of requests for visits by non-jury members becomes so great that the Marshals cannot feasibly handle such large number, then such visits shall be limited in the Marshal's discretion. If such limitation is required, each juror shall provide the Marshal with the names of those persons he or she desires as visitors. During all visits by non-jurors, the Marshal shall take all necessary precautions to insure that no discussion of any events even remotely relating to this trial or to any person or matter described in paragraph (b), above, shall occur.*

*(e) All mail or telegrams directed to jurors shall either be retained by the Marshal until the end of the trial or, at the option of the juror, shall be opened by the Marshal and all references to this trial shall be deleted before delivery to the juror. In like manner, all mail from jurors shall be examined by the Marshal and such reference deleted or, at the option of the juror, held by the Marshal until the close of the trial.*

(10) The Marshal shall arrange to have the jurors awakened in order that there shall be

ample time for the jurors to get ready each morning, to have breakfast, and be transported to the United States Courthouse and be assembled in the jury room, ready for trial, at the scheduled time each day.

(11) The Marshal shall also be responsible for seating in the courtroom, and shall, in his discretion, assign seating areas for the defendant's family and for the press. All spectators in the courtroom shall be seated. Additionally, a secondary room in the courthouse may be designated for viewing the trial, and two or more closed-circuit television monitors, with audio, placed there. In such event, a stationary camera shall be set up in the courtroom, with microphones as necessary in order to transmit the proceedings to the secondary room. A line integrity check shall be performed daily on the cable(s) between the courtroom and the secondary viewing room.

(12) This order may be altered, amended, or changed from time to time in the discretion of the Court.