Sherry **ROSSBACH**, Plaintiff,

v.

Katherine Fernandez **RUNDLE**, Defendant.

**Knight Ridder, Inc.**, Intervener.

No. 99984Civ.

United States District Court, S.D. Florida.

Feb. 7, 2000.

---

Richard McDuff, Johnson, Anselmo, et al., Ft. Lauderdale, FL, Robert Rosenblatt, Pinecrest, FL, for plaintiff.

Sherril Colombo, Christopher Brown, Bilzin, Sumberg, et al., Miami, FL, for defendant.

Sanford Bohrer, Holland & Knight, Miami, FL, for intervenor.

## OMNIBUS ORDER

HIGHSMITH, District Judge.

THIS CAUSE is before the Court upon Defendant's motion for a protective order, which was filed under seal, and two related motions to intervene submitted by Knight Rider, Inc., the publisher of the Miami Herald (hereinafter the "Herald"). The Court held a hearing on these matters on February 4, 2000. Having heard the arguments of counsel and upon further review of the record, the Court grants in part the Herald's motions to intervene and grants in part Defendant's motion for protective order.

### I. BACKGROUND

This is an employment discrimination case, which has garnered significant media attention. Plaintiff was formerly employed as a secretary by the Miami–Dade County State Attorney's Office (hereinafter the "SAO"). In February of 1998, Plaintiff was suspended pending the outcome of an investigation into a highly publicized phone-sex scandal. The incident involved personnel from the Major Crimes Unit of the SAO and an incarcerated felon, who was to testify for the SAO in a murder prosecution. During the investigation of the phone-sex scandal, Plaintiff alleged that she had been sexually harassed and assaulted by the chief of the Major Crimes Unit, Michael Band. Soon after these allegations became public, Band resigned from the SAO.

In June of 1998, Plaintiff was temporarily reinstated to a secretarial position with the SAO, but she was not reassigned to the Major Crimes Unit. Following the

completion of its internal investigation into the phone-sex scandal, the SAO terminated Plaintiff on April 1, 1999. Plaintiff has brought this action, alleging that she was subjected to unlawful sexual harassment during the term of her employment and that she was terminated in retaliation for complaining of that harassment, against Katherine Fernandez Rundle, the Miami–Dade County State Attorney.

On January 10, 2000, the Herald published an article about this case, which appeared on the front page of Metro Miami section. The article was subtitled *Secretary alleges sexual goings-on* and detailed several allegations of sexual affairs among and improprieties by personnel of the SAO. These allegations tracked nearly verbatim some of the assertions made in Plaintiff's first request for admissions propounded upon the SAO. In response to the article, the SAO moved the Court for permission to file under seal a motion for a protective order and an order restricting communication by participants in this case with the media. The Court granted the SAO permission to file the motion under seal, and on January 14, 2000 the SAO filed under seal its omnibus motion for a protective order and order limiting communications with the media. On January 25, 2000, the Herald filed a motion to intervene seeking to contest the filing of a motion under seal and the issuance of any order sealing court records or limiting communication with the media. Once it learned that the SAO had already filed its motion under seal, the Herald filed a second motion to intervene, for the purpose of seeking to compel the unsealing of the SAO's motion filed under seal.

1. In its response to the Herald's motion to intervene, the SAO conceded that the Herald had standing for the purpose of opposing an order requiring that documents be filed under seal or restricting communications with the media.

2. The SAO's omnibus motion for a protective order and order limiting communications with the media, along with its attached exhib-

## II. DISCUSSION

### A. Intervention

At the February 4, 2000 hearing, the Herald conceded that it does not have standing to contest the entry of an order limiting the scope of discovery in this matter. Therefore, to the extent that the Herald's motion to intervene may be construed as seeking to intervene with regard to the SAO's proposed protective order limiting the scope of discovery, the Herald's motion is DENIED. The Court, though, granted the Herald permission to intervene for the limited purpose of opposing the entry of an order that would require the filing of future documents under seal or restrict the participants in this case from speaking with the media.[1]

Finally, at the February 4, 2000 hearing, the Court denied the Herald's motion to intervene to unseal file. The Court will now set forth the bases for that ruling. As noted above, the Court granted the SAO permission to file its motion under seal. The Court has thoroughly reviewed the content of the SAO's motion, Plaintiff's response (which was also filed under seal), and the exhibits to those two pleadings.[2] That review leads the Court to conclude that, at the present time, there is ample cause to keep those documents under seal.[3]

 It is well settled that the media and the public in general possess a common-law right to inspect and copy judicial records. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). "The right to inspect and copy records is not absolute, however. As with other forms of access, it may interfere with the administration of justice and hence may have to be cur-

its, and Plaintiff's response, along with its attached exhibits, are the only documents that have been filed under seal in this case.

3. At an appropriate time during or soon after the conclusion of this litigation, the Court will *sua sponte* review the documents under seal and address whether there remains cause to continue to maintain them under seal.

tailed." *Newman v. Graddick,* 696 F.2d 796, 803 (11th Cir.1983). This right of access creates a presumption in favor of openness of court records, which "must be balanced against any competing interest advanced." *United States v. Noriega,* 752 F.Supp. 1037, 1040 (S.D.Fla.1990).

■ Among the factors that courts have recognized as warranting restricting access to court records is the use of records for "illegitimate purposes [such] as to promote scandal." *Newman v. Graddick,* 696 F.2d at 803. As Justice Scalia explained, while a judge of the District of Colombia Circuit:

> It is uncontested ... that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of the court to insure that its records are not used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case. Similarly, *courts have refused to permit files to serve as reservoirs of libelous statements for press consumption* ....

*In re the Reporters Committee For Freedom of the Press,* 773 F.2d 1325, 1333 (D.C.Cir.1985) (quotation marks and citations omitted) (emphasis supplied). While commercial harm or embarrassment of a party does not alone justify sealing the entire record of a case, *see Wilson v. American Motors Corp.,* 759 F.2d 1568, 1570–71 (11th Cir.1985) (per curiam), it is appropriate to seal certain records when those particular records contain highly sensitive and potentially embarrassing personal information about individuals. *See Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (7th Cir.

1997) (acknowledging that it may have been appropriate for the district court to seal psychiatric records that though pertinent to the suit would have been "highly embarrassing to the average person"); *see also United States v. Stoneman,* 776 F.2d 1104 (3rd Cir.1985) (affirming district court's sealing of a bill of particulars that contained the names of unnamed co-conspirators, where revealing the names of the co-conspirators would have been career threatening). When the sensitive information pertains to non-parties who are not public figures, the balancing of interests in favor of protecting the privacy of the non-parties and against uninhibited access to the records is strengthened.

■ In the present case, the SAO's motion and Plaintiff's response to that motion address the appropriateness of Plaintiff's discovery requests propounded upon the SAO, particularly Plaintiff's first request for admissions. Many of those requests are better characterized as imputations of personal dalliances of employees of the SAO, both attorneys and secretarial staff. For example, the requests seek to establish as fact that personnel of the SAO: (1) engaged in extramarital affairs; (2) have drinking problems; and (3) made personal long distance phone calls at work. Unfortunately, some of these matters have already been disseminated and reported by the press. There are, however, some allegations contained in the requests that, to the Court's knowledge, have not yet been reported.

■ For the most part, the individuals named in the requests are not purported to have been involved in the matters that gave rise to this action and are not public figures. Rather, they are individuals who by happenstance had the same employer—the SAO—as Plaintiff. Because of the media coverage of this case, their alleged personal proclivities have now also become the subject of news reporting.[4]

---

4. In the context of a defamation case, the Eleventh Circuit has noted that there are two significant differences between "public" and "private" figures. *See Silvester v. American Broadcasting Companies, Inc.,* 839 F.2d 1491,

1496 (11th Cir.1988). First, public figures have access to the media, so they may refute accusations levied against them, while private figures generally do not have such access.

With due deference being given to the public's right to know newsworthy information, the Court has balanced the presumption of openness of court records against the competing interests present in this case. Those competing interests include: (1) the privacy rights of non-parties to this action; (2) the manner in which discovery materials relating to non-parties have previously been disseminated and reported; and (3) the fact that all of the allegations contained in Plaintiff's request for admissions have not yet been reported by the press.[5] The assertions contained in the request for admissions are of a highly personal and inflammatory nature. Given the press coverage of this case, if these allegations were made public, non-parties to this action, who are not themselves public figures, would likely be subjected to unwanted and uninvited publicity and notoriety. Under these circumstances, the Court finds that protecting the privacy of the individuals named in the requests and shielding them from potentially embarrassing publicity warrant maintaining the SAO's motion and Plaintiff's response, along with their attached exhibits, under seal at this time.

The Court finds further support for maintaining the subject records under seal in Federal Rule of Civil Procedure 26, which sets forth the general parameters of discovery in civil cases. The two pleadings that have been maintained under seal address primarily discovery disputes involving non-parties to this litigation. Rule 26(c) authorizes the Court "to make any order which justice requires to protect a party or person from annoyance, embar-

rassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c). The authority to limit access to discovery materials by the media and public under Rule 26(c) has expressly been upheld. *See In re Alexander Grant & Co. Litigation,* 820 F.2d 352 (11th Cir.1987) (per curiam). Accordingly, the Herald's motion to intervene to unseal file is PRESENTLY DENIED.

## B. Plaintiff Has Exceeded the Permissible Scope of Discovery

As is evident from the Court's preceding discussion, much of the discovery propounded by Plaintiff has run afoul of the liberal relevancy standard that applies to discovery. For this reason, the Court is compelled to enter an order limiting the scope of discovery in this case.

The scope of discovery is governed by Rule 26 of the Federal Rules of Civil Procedure. Rule 26 allows "discovery regarding any matter, not privileged, which is relevant to the subject matter of the pending litigation." Fed.R.Civ.P. 26(b)(1). The term "relevant" in this definition is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). The scope of discovery, though, is not without limits. *See id.* at 351–52, 98 S.Ct. 2380. "Discovery of matter 'not reasonably calculated to lead to discovery of admissible evidence' is not

*See id.* Second, and of greater importance, public figures have voluntarily chosen to expose themselves to public scrutiny. *See id.* "In short, public figures 'invite attention and comment.' " *Id.* (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). While this is not a defamation action, the Court finds the distinction between public and private figures in that field of law instructive in this case. Many of the prosecutors and secretaries who have had their personal lives subjected to media reports have done nothing to invite public attention

and comment to themselves and can do little to refute the allegations levied against them now that they have been made public.

5. In her motion and at the February 4, 2000 hearing, Defendant suggested that Plaintiff has engaged in a calculated campaign to discredit the SAO's public image in advance of the upcoming reelection campaign of Ms. Rundle. At this time, the Court has seen no evidence to support the imputation of such a motive to Plaintiff or Plaintiff's counsel.

within the scope of Rule 26(b)(1)." *Id.* at 352, 98 S.Ct. 2380. Discovery requests that are otherwise reasonable may also be limited for the following reasons:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source .that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, and the importance of the proposed discovery in resolving issues.

Fed.R.Civ.P. 26(b)(2). The onus is on the party resisting discovery to demonstrate specifically how the objected-to request is unreasonable or otherwise unduly burdensome. *See* Fed.R.Civ.P. 33(b)(4); *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1559 (11th Cir.1985); *Chubb Integrated Sys. Ltd. v. National Bank of Washington,* 103 F.R.D. 52, 59–60 (D.D.C. 1984).

■ In this case, Plaintiff's counsel has simply exceeded the bounds of permissible discovery. In a sexual harassment claim based upon an allegedly hostile work environment, such as Plaintiff's underlying claim, the relevant issues are (1) acts of alleged sexual harassment the plaintiff personally perceived and (2) acts of sexual harassment that the employer was or should have been aware of. *See Turnbull v. Topeka State Hospital,* 185 F.R.D. 645, 648–49 (D.Kan.1999) *see generally Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Moreover, Rule 403 of the Federal Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury .... " Fed. R.Evid. 403. Despite these limitations, Plaintiff's discovery requests have inquired into every conceivable office rumor from the SAO, with little or no regard for the subject matter of those rumors.

For instance, Plaintiff has sought to discover whether alcohol was consumed at the SAO's Christmas party and whether Ms. Rundle was aware of such consumption in violation of the SAO's policies. Assuming that this information would be remotely relevant to Ms. Rundle's knowledge of the alleged sexual harassment that Plaintiff suffered, it is so highly prejudicial that the Court would exclude such evidence under Rule 403. It is these type of far reaching requests that are unlikely to produce any admissible evidence, but which are sure to annoy, embarrass, and harass, that necessitate the defining of the permissible parameters of discovery in this case. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570 (11th Cir.1992) ("[d]iscovery should be tailored to the issues in the particular case").

Rather than address each of the particular objections raised by SAO, the Court will set forth the permissible areas of discovery. Plaintiff is henceforth prohibited from pursuing discovery of subject matters not reasonably related to proving the elements of her claims (i.e., her claim of sexual harassment based upon a hostile work environment and her retaliation claim). Permissible subjects of discovery include: (1) facts related to the instances of alleged sexual harassment personally perceived by Plaintiff, as explained in her complaint; (2) the knowledge of Plaintiff's superiors, including Ms. Rundle, of instances of alleged sexual harassment in the Major Crimes Unit, during Plaintiff's employment; and (3) the motivation for Plaintiff's transfer out of the Major Crimes Unit and subsequent termination. Plaintiff shall strictly confine her discovery requests to matters bearing directly on her claims as set forth in her complaint. It is further ORDERED that all discovery requests and information disclosed by the parties through discovery that is not filed with the Court shall henceforth be kept strictly confidential. *See generally In re*

*Alexander Grant & Co. Litigation,* 820 F.2d 352 (11th Cir.1987) (per curiam). Violation of this confidentiality order will subject the violator to an immediate contempt of court citation.

### C. Future Filings Under Seal

 The SAO has requested that all discovery materials and all pleadings referencing discovery materials be filed under seal. As discussed above, there exists a strong presumption in favor of the openness of court records. While discovery materials are not normally filed with the Court, once they are filed with the Court, they become part of the public record and the presumption of openness attaches.

The SAO has not made an adequate showing to overcome automatically the presumption of openness with regard to all prospective filings referencing discovery. But, in order to insure that discovery motions do not become a means of circumventing the Court's order requiring that the parties maintain discovery that is not part of the Court record confidential and to protect the possible privacy interests of non-parties, the Court will require that all discovery motions be filed initially under seal. The Court will then promptly review the filing and issue an order either unsealing the filing or explaining why it will be maintained under seal. If the Court decides that any future materials must be held under seal, it will forward a copy of the order explaining the reasons for keeping the materials under seal to the Herald's counsel. The Herald's counsel will then have five days to interpose objections to keeping the materials under seal. Accordingly, the SAO's motion to require future filings under seal is GRANTED to the extent set forth above. The SAO's motion to require future filings under seal is DENIED in all other respects.

### D. Communications With the Media

 The SAO has also requested an order restricting counsel, the parties, and their representatives from making "extrajudicial statements" to the media. Such an order would implicate not only the ac-cess rights of the media but the First Amendment rights of the individuals to whom it would apply. This type of extreme remedy is reserved for only the most notorious of cases, where the potential for pretrial publicity impacting upon the right to a fair trial is great. *See, e.g., United States v. Hill,* 893 F.Supp. 1039 (N.D.Fla.1994). This is not such a case. The SAO's motion to restrict communications with the media is therefore DENIED.

The Court will take this opportunity to iterate the requirements of Local Rule 77.2(A) in cases. Local Rule 77.2(A)(7) provides:

A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates [to]

(a) Evidence regarding the occurrence or transaction involved.

(b) The character, credibility, or criminal record of a party, witness, or prospective witness.

(c) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.

(d) Any other material reasonably likely to interfere with a fair trial of the action.

*Local Rule of the United States District Court for the Southern District of Florida,* R. 77.2(A)(7). Counsel are advised that the Court will strictly enforce Local Rule 77.2(A)(7) in this case, and that they are expected to scrupulously comply with both the letter and the spirit of the Rule. Violations of the Rule will subject offending counsel to the institution of contempt proceedings by this Court. *See, e.g., In re Morrissey,* 996 F.Supp. 530 (E.D.Va.1998) (lawyer held in contempt for violating

court's trial publicity rule), *aff'd*, 168 F.3d 134 (4th Cir.1999).

## III. CONCLUSION

In light of the foregoing, it is hereby ORDERED that,

(1) The Herald's motion to intervene is GRANTED to the extent that it seeks to contest the entry of an order requiring the future filing of documents under seal or limiting communication by participants in this case with the media;

(2) The Herald's motion to intervene to unseal file is DENIED. The SAO's motion that was filed under seal and Plaintiff's response, along with the exhibits attached to those pleadings, will PRESENTLY REMAIN UNDER SEAL;

(3) The SAO's motion for a protective order limiting the scope of discovery is GRANTED to the extent set forth above;

(4) The SAO's motion to require the future filing of documents under seal is GRANTED IN PART as set forth above. All discovery motions will initially be filed under seal, pending a review of their content by the Court;

(5) The SAO's motion for an order limiting communication by participants in this case with the media is DENIED;

(6) Plaintiff's motion to strike the SAO's motion for a protective order, which is contained in Plaintiff's response, is DENIED; and

(7) The Herald shall have ten days from the date of this order to file objections to the order. Upon receipt of any such objections, the Court will conduct a de novo review of its rulings and rule upon the Herald's objections.